FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 1 9 2018

JAMES N. HATTEN, Clerk
By: ⟨signature⟩ —Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| JULIE P. WHITCHURCH, | : | |
| Plaintiff | : | CIVIL ACTION |
| v. | : | NO. |
| ELARBEE THOMPSON WILSON & SAPP, LLP, | : | |
| READ GIGNILLIANT, | : | 1:17-CV-05205-AT |
| DOUGLAS DUERR, | : | |
| REBECCA SHEPHARD, | : | |
| POOLE HUFFMAN, LLC, | : | JURY DEMAND |
| TODD POOLE, | : | |
| VIZANT TECHNOLOGIES, LLC, | : | |
| JOSEPH N. BIZZARRO, | : | |
| LANE WIGGERS, | : | |
| DAVID ASKINAS, | : | |
| FRANK SEIDMAN, | : | |
| CAPITAL SOLUTIONS, INC, | : | |
| IT ACCELERATION, INC, | : | |
| DAVID YARNALL, | : | |
| KANG HAGGERTY FETBROYT, LLC | : | |
| EDWARD T. KANG, | : | |
| GREGORY MATHEWS, | : | |
| MATTHEW KEOWN, | : | |
| M. BLACKWOOD, | : | |
| JUDGE HARVEY BARTLE, III, | : | |
| JUDGE RUSSELL VINEYARD, | : | |
| DEPARTMENT OF JUSTICE/ | : | |
| US MARSHALS SERVICE, | : | |
| Defendants | : | |

## FIRST AMENDED COMPLAINT
## AS TO DEFENDANTS TODD POOLE and POOLE HUFFMAN LLC

Julie P. Whitchurch files this first amended complaint as to the defendants Todd Poole and POOLE HUFFMAN LLC (hereafter "POOLE"). The amendments to the verified complaint are detailed herein and marked by a bolden typeset.

As to defendant IT ACCELERATION INC, at #23 of the original filing, the defendant is listed as IT ACCELERATION, INC, WILSON, LLP. This is an obvious typographical error.

The "PRELIMINARY STATEMENT, NATURE OF THE ACTION, JURISDICTION, and VENUE" , and the 'PARTIES' (with the exception of IT Acceleration Inc), detailed on pages 2-18 of the originally filed complaint remain the same and are not included herein.

## IV. BACKGROUND

### a. Employment with Vizant Technologies, LLC

31. In the most basic sense, Vizant Technologies, LLC is a business that has been built on cutting cost in the processing of credit cards for a business. As an example, if Company accepts credit cards and pays a rate of 1.75% and Vizant Technologies, LLC identifies ways to lower that rate to 1.45%, Vizant would be compensated a

negotiated percentage of the savings. Contractually, Vizant was to be compensated *only* for the savings that were identified by and the direct result of Vizant's intervention. And while the services of Vizant Technologies, LLC has been expanded over the years to identifying cost savings measures within the entire treasury functions of a business, the bread and butter of Vizant is lowering the cost of a business in the processing of payment cars. I began my employment with Vizant Technologies, LLC as a Business Development Manager (an outside sales representative). I was promoted in 2012 to a Regional Director of Business Development and again in August of 2013 to the National Director of Business Development. At the time of my promotion to National Director, in mid-July of 2013, I meet with Joseph Bizzarro. Mr. Bizzarro promised me an annual salary of $110,000 plus commissions, bonuses, and reimbursement for any out of pocket expenses I incurred in my role as the National Director.

32. At all times during my employment, I, as well as all other Vizant employees that reported to me, in a business development/sales role, had a verbal and written compensation plan and a promise

by Joseph N. Bizzarro to be compensate in the form of wages, commissions, bonuses, and reimbursement of expenses incurred in the performance of their/my duties.

33.	In a scheme to defraud Whitchurch and other Vizant employees, of those monies, the defendants[1] used false weights and measurements in calculating those earnings to ensure that if, and/or when, the enterprise was to compensate the employee as promised, the payment would be pennies on the dollar for the actual earnings, commissions, and expenses owed to the employees.

**33a**.	In a scheme to defraud its customers and agents the enterprise, Vizant Technologies, LLC used false weights and measurements, took credit for cost reductions that were not attributed to the enterprise's efforts, and routinely used deceptive business practices as a means to over bill their clients and under compensate the agents for work performed. When the client or agent rebuffed the "cost savings projections", Vizant Technologies, LLC (formally known as PE Systems, INC.) would file a vexatious

---

[1] Vizant Technologies, LLC, Frank Seidman, Lane Wiggers, Capital Solutions, Inc, David Askinas, and Joseph N. Bizzarro.

civil complaint and bribe witness, often their employees, to give

false testimony and manufacture evidence during the litigation, as

a means to coerce settlements from their victims.  See:

| Case No. | Case Title |
|---|---|
| 11-2-05093-3 | PE Systems v. NorthStar Hotel Group Inc. |
| 12-2-01736-5 | PE Systems v. Convergent Outsourcing |
| 10-2-03367-4 | PE Systems v. Automotive Supply Assoc Inc |
| 10-2-03983-4 | PE Systems v. Morena Tile San Juan Inc. |
| 11-2-01537-2 | PE Systems v. Daybreak Merchant Services |
| 11-2-01537-2 | PE Systems v. Vanhook, Joshua, Etux Ethal |
| 11-2-03934-4 | PE Systems v. Metropolitan Enterprise, Inc. |
| 11-2-03934-4 | PE Systems v. Metropolitan Hospital |
| 11-2-01030-3 | PE Systems v. North West Company |
| 12-2-00256-2 | PE Systems v. Health Fusion Inc. |
| 12-2-02632-1 | PE Systems v. California Pacific Medical |
| 12-2-02632-1 | PE Systems v. Steven Weaver |
| 12-2-03582-7 | PE Systems v. Horseshoe Bay Resort |
| 12-2-03611-4 | PE Systems v. Minnesota Viking Football |
| 12-2-04742-6 | PE Systems v. Detroit Lions |
| 12-2-04742-6 | PE Systems v. Chicago White Sox |

When the enterprise received negative press from the litigious nature,

Mr. Seidman, Mr. Bizzarro, and Mr. Wiggers changed the name of the

company from PE Systems to Vizant Technologies, LLC and continued

on with the same racket.

| | |
|---|---|
| 12-2-04682-9 | Vizant[2] v. Hudson Bay Company |
| 12-2-04742-6 | Vizant v. Cleveland Indian |
| 12-2-04817-1 | Vizant v. Ski Windham Operating Corp |
| 13-2-02003-8 | Vizant v. American Baseball Company |
| 15-2-01758-1 | Vizant v. Car Rental System |
| 15-2-01758-1 | Vizant v. Hertz Australia LTD |
| 15-2-01758-1 | Vizant v. Hertz Global Inc. |
| 17-2-02265-3 | Vizant v. Hertz Ekurope Limited |
| 17-2-02265-3 | Vizant v. Hertz Corporation |
| 17-2-02265-3 | Vizant v. Hertz New Zealand |
| 12-2-049321-1 | Vizant v. AARP |
| | Vizant v. YMCA of Silicon Valley Ca |
| 12-2-04996-8 | Vizant v. Eye-Mart Express Ltd |
| 14-2-00136-8 | Vizant v. Hilbertos Mexican Food |
| 14-2-00137-6 | Vizant v. Locust Lumber Company |
| 13-2-00387-7 | Vizant v. Vemma Nutrition |
| 14-2-04198-0 | Vizant v. Allergan |
| 17-2-03231-4 | Vizant v. Mapletree US Management LLC |
| 13-2-04207-4 | Vizant v. Advantage Medical Supplies, INC |
| 13-2-04207-4 | Vizant v. Richard Weatherman |
| 13-2-04207-4 | Vizant v. Advantage Plus Agency |
| 17-2-03323-0 | Vizant v. YRC Worldwide Inc. |
| | Vizant v Whitchurch and Davis |
| cv-2016-005133 | Vizant v. Brenda Deaton |
| cv-2016-001623 | Vizant v. Hammond Lumber Company |
| cv-2016-005572 | Vizant v. Allergan Inc |
| cv-2016-005572 | Vizant v. Skin Medica Inc. |
| cv-2017-006794 | Vizant v. The Hearst Corporation |
| cv-2014-010210 | Vizant v. Ocean State Jobbers |
| cv-2017-006913 | Vizant v. Cox Corporate Service |
| cv-2017-006809 | Vizant v. Profinity, LLC |
| cv-2014-009643 | Vizant v. Footlocker |
| | Vizant v. New Thermo- Service |
| | Vizant v. Dallas Fort Worth Airport |

The above is only a sampling of the vexatious litigations the defendants have filed across the country as the full extent of their fraud on the American judicial system is unknow.

34.    In January of 2013 Bizzarro described and detailed the 2013 earning structure for the Business Development Managers and myself.  Thereafter, he rolled out the plan, by way of a conference call with the Business Development Managers, Regional Directors, and myself.  That plan included a bonus for every appointment I, and/or the employees in a business development role, attended and conducted with a prospective client. Bizzarro encouraged, approved, and promised to compensate Whitchurch for EVERY appointment she was physically able to attend, either on her own or with one of the Business Development Managers reporting to her.  Because of Bizzarro's false representations of compensation, I spent eleven (11) months working an average of 60-70 hours per week traveling extensively to attend as many appointments as possible, often spending my own money for travel expenses[3].  Each month when it came time for Vizant to make

_____

[3] On numerous occasions the company American Express credit cards were suspended and/or canceled because Vizant fell behind on the payments.

good on Bizzarro's promises, Bizzarro would represent there had
been some sort of "error" on the part of the payroll or finance
department and fraudulently represented the monies would be
forthcoming. On numerous occasions, I asked Bizzarro to rescind
the offer to compensate the employees, and myself, in this manner
*if* the company could not afford it. On each occasion Bizzarro
stood firm with the lies and excuses and assured me it was all a
big mistake and the payments would be forthcoming.

35. Through those deceptive business practices, and other similar
schemes, $12,076.92 in earned compensation was fraudulently
withheld from me. I secured a professional services agreement
between Vizant Technologies, LLC and Floor & Décor Outlets of
America, headquartered in Atlanta. Calculated in accordance
with the Vizant earning plan and Bizzarro's representations my
earnings were $3,211.54. After multiple attempts to collect, and
well after I was terminated, I received a check in the amount of
$582. I was never compensated the remaining $2,622. As well,
and despite multiple representations, I was never reimbursed the
$3,400 in out of pocket expenses incurred while traveling on

behalf of Vizant.  In addition, I was never compensated the $5,000 for attending/conducting over 100 appointments with prospective clients.

36.    The defendants continued the same wage and earnings scheme as late as the summer of 2015, as Gregory Parentice filed a verified complaint in the Commonwealth of Delaware declaring the defendant, Vizant Technologies, LLC was fraudulently withholding over $30,000 in promised and earned wages and commissions.  According to the verified complaint, Mr. Parentice was coerced into signing a Non-Compete & Confidentiality Agreement by the defendant with fraudulent promises of being paid the $30K in back wages and earnings only to be terminated within days of signing the agreement and before being paid the earnings.  **(Exhibit A)**

**36a.** Upon information and belief, the persons associated with the enterprise continue the scheme to steal their employees' earnings, misappropriate their employees' monies earmarked for the payment of their health insurance premiums, and file meritless

civil suits to coerce settlements from their customers, agents, vendors, and employees. **(Exhibit AA)**

37. During the spring and summer of 2013, I was being hammered with calls and emails from employees, vendors, partners, and clients: 1) demanding answers as to why they had not been compensated for services rendered and when those payments would be forthcoming; 2) allegations Vizant Technologies, LLC had exaggerated their roll in the cost savings realized by the customer or unexaggerated the same when it came time to compensate the employee and the alliance partners. **(Exhibit B)** I went to Bizzarro repeatedly, only to be told one lie after the other, i.e. "the checks in the mail", "mistake in the payroll department", "software error", and/or "tell them to sue me". By the late summer of 2013, the defendants had fallen so far behind in payments; and with the Vizant investors being owed their quarterly monies, the defendants began misappropriating the funds the employees were contributing to the company provided health insurance plan. By early September of 2013, the employees

who participated in the health insurance program, to include the plaintiff, received a "Prior Coverage" letter from the health insurance provider, United Healthcare, indicating our health insurance had been canceled. In addition, and at this same time, I was receiving calls from employees, who were being denied health insurance benefits and told their health insurance had been canceled. **(Exhibit C) (Exhibit D)**

38. Upon information and belief and as late as 2016, the enterprise and persons associated with, continued with the ongoing scheme of misappropriating the employee contributions for health insurance premiums, causing each participant to receive a <u>Notice of Prior Coverage</u> from the provider.

39. By the fall of 2013, Bizzarro, Vizant Technologies, LLC, Frank Seidman, Lane Wiggers, David Askinas, and Capital Solutions, INC were robbing from "Peter" (the employees, vendors, and agent/partners), to pay "Paul" (the investors). In September of 2013 and with a "Ponzi" like scheme, in which deceptive and outright false financial projections were made, Capital Solutions,

INC, the enterprise, and persons associated[4] therewith, raised over 1,000,000 from unsuspecting investors. **(Exhibit E)**

40. After witnessing evidence of the scheme for over a year, which included, but was not limited to: gross financial mismanagement, theft of employees' earnings, misappropriation of health insurance premium payments, overbilling of clients, the filing of vexatious lawsuits against clients, and an ongoing fraud aimed at deceiving the employees, clients, partners, and investors of monies; I contacted the Vizant Board of Directors, Frank Seidman, Lane Wiggers, and Capital Solutions, INC and reported the malfeasants and criminal activities going on at Vizant Technologies, LLC.

41. On December 4, 2013, I spoke with Lane Wiggers while I was boarding a flight from Boston to Atlanta, after attending appointments with prospective Vizant clients, Mr. Wiggers instructed me to contact the Vice President of Human Resources for Vizant, Shawnna Kurimura. When I asked Wiggers why I needed to file a report with HR, Mr. Wiggers responded "as a means to protect yourself". Upon landing in Atlanta, I received a

---

[4] Kyle Bransfield.

voicemail from David Askinas, informing me that I was
terminated.   The following day, December 5, 2013, my sister,
Jamie Davis, who at the time was employed as a Business
Development Manager, was terminated in retaliation.

### b. Georgia Department of Labor &
### Cobb County Superior Court

42.   Upon being wrongfully terminated, I and my sister (Davis) filed
for unemployment benefits through the Georgia Department of
Labor. Vizant Technologies, LLC opposed the payment of those
benefits.  Specifically, in December of 2013 and January of 2014,
Shawn Kurimura and David Askinas, who were being paid by
Vizant Technologies, LLC, made knowingly false representations
to GA DOL, via wire and US Mail.  Both stated I had been
terminated for sexually harassing female workers, credit card
fraud, failure to follow management, and violent combative
outburst.

43.   In January of 2014, the GA DOL conducted separate hearings on
both the Whitchurch claim and the Davis claim.  During the

proceeding, in the Whitchurch matter, David Askinas impersonated an attorney and presented himself as "Vice President & General Counsel of Vizant Technologies, LLC", despite having no license to practice law. Mr. Askinas, on behalf of, and conducting the matters of law for the enterprises, purposely and corruptly intimated and influenced the GDOL representative by making false claims *he* was an attorney and *I* had committed credit card fraud and was prone to violent combative outburst. The defendants' intent was to defraud the State of Georgia and the United States. Because of the defendants' defamatory statements and corrupt influence, the GA DOL denied my, and my sister's, benefits.

44. On January 17th, 2014, I launched the website www.nocapitalsolutions.com warning the public of the gross incompetence and malfeasance of Joseph N. Bizzarro and the breach of fiduciary care, responsibility, and loyalty duties of the private equity management firm, Capital Solutions, Inc, to the investors, employees, and/or customers of Vizant Technologies, LLC.

45. Immediately thereafter, and on January 21, 2014 Vizant
    Technologies, LLC filed a vexatious civil action in the Cobb
    County Superior Court, State of Georgia, Case No. 14-1-403-49.
    The verified (by Bizzarro) civil action was a stereotypical SLAPP
    suit which alleged claims of: Defamation, Disclosure of
    Confidential Information, Breach of Contract, Tortious
    Interference with Business Relations, and Misappropriation of
    Trade Secrets. Anthony Sanacory of Duanne Morris LLC
    represented Vizant Technologies, LLC.

46. The Bizzarro declaration, offered in support of the complaint and
    in furtherance of the enterprise, urged I was lying, regarding the
    lapse of health insurance and wage payments, and included the
    following statement:

    > "...statements regarding a lapse of health care coverage are
    > false. Rather, due to an error on the part of Vizant's heath
    > care insurance carrier in the processing of Vizant's payment
    > check...".

    And despite the fact that the Vizant payroll was late or absent,
    routinely, throughout 2013 Bizzarro declared:

"...employees experienced a one-time, one-day delay in receiving their paychecks for the July 15, 2013 payroll due to an error on the part of Vizant's payroll processor."

47. During the discovery phase of the Cobb County litigation, I subpoenaed the Vizant payment records from United Healthcare. Those records confirmed the employees' health insurance policy was canceled because Vizant Technologies, LLC did not pay the premiums on time, despite the fact the monies were being withheld from the employees. **(Exhibit F)** I subpoenaed the records from Vizant's payroll processor "ADP". Those records showed conclusively that, despite Bizzarro's sworn declarations, there was *no* "error on the part of Vizant's payroll processor". Rather Vizant Technologies, LLC, CFO, David Jablonski, sent an email to the staff at ADP instructing the payroll processor ***not to pay*** the employees as scheduled. **(Exhibit G)**

48. Despite Bizzarro's sworn representations to the contrary, there were no less than ten (10) pay periods between March 2013 and December 2013 when the employees' earnings, to include mine, were paid late, were far less than owed, and/or were not paid at all.

49.    On or about February 3rd, 2014, I was invited to meet with Vizant

Technologies, LLC outside counsel, Anthony Sanacory at the law

offices of Duane Morris LLP in Atlanta GA, to discuss the

outstanding wages and expenses being unlawfully withheld.  The

discussion quickly elevated to outright extortion as Mr. Sanacory

threatened Vizant Technologies, LLC would continue with their

claims (of sexual harassment and fraud) with the GA Department

of Labor if I would not agree to the terms of their settlement.  I

argued it was illegal for Vizant and Sanacory to negotiate using

the State of GA benefits and my stolen money as leverage. Mr.

Sanacory countered that "often times companies will oppose

unemployment benefits to reach a settlement with an employee".

I told Mr. Sanacory he was wrong.   Either I was entitled to the

benefits, as a matter of law and policy, or I was not; it was not

legal for Vizant to continue to make knowingly false statements to

the State of GA, or anyone else, to coerce a settlement from me

and informed Sanacory that "just cause everybody's doing it, don't

make it right."  Mr. Sanacory became infuriated and told me that

Vizant would only release the earnings and expenses being

withheld if, **and only if,** I would release Vizant and Capital Solutions from any and all wrongdoing and agree to be permanently restrained from issuing any warnings or ringing any alarms as to the Vizant/Capital Solution scheme. I told Sanacory, in no uncertain terms, I would not be a party to him and the defendants extorting me with 1) knowingly false claims to the GA DOL and 2) my own money. I told Sanacory I had faith the GA Department of Labor would overturn the previous ruling on my appeal.

50. On February 8, 2014, and 5 days after the meeting with Sanacory, I received, via USPS, an erroneous 1099 MISC Internal Revenue Service Earning Statement fraudulently prepared and issued by Vizant Technologies LLC, in the amount of $20,451.19 for alleged 2013 earnings. I immediately contacted Capital Solutions, Frank Seidman, Lane Wiggers, Joseph Bizzarro, and Vizant's counsel and adamantly denied the $20,451.19 in additional 2013 earnings and demanded they withdraw the knowingly false fillings. The defendants refused and because of the fraudulent reporting to the

IRS, I was billed over $7,000 in taxes on income that I never earned, never received, and Vizant Technologies, LLC never paid.

51. By late February of 2014, Anthony Sanacory, of Duane Morris, LLC, resigned or was terminated and the defendants hired, and projected their fraud onto the next law firm, ELARBEE, THOMPSON, WILSON, & SAPP, LLC, located in Atlanta, Georgia.

52. On February 25th and April 17th of 2014 the Georgia Department of Labor reversed their decisions and granted both Whitchurch and Davis benefits. The GA DOL stated, in part and in regard to Whitchurch's claim; had Whitchurch not reported the gross illegal activities of the CEO she would not have been terminated. And in part and with regards to Davis, had Davis' sister not reported the gross illegal activities of the CEO, Davis would not have been terminated. The DOL went on to stated they had found "no credible testimony was given by Vizant Technologies, LLC" in regard to their opposition of the claims. **(Exhibit H)**

53. During the month of March 2014, I exchanged multiple communications between Vizant Technologies, Capital Solutions,

and the attorneys of ELARBEE THOMPSON. And at the request

of those parties, who fraudulently represented Vizant would be

forthcoming with the owed earnings and expenses, I resubmitted

months and months of earning and expense reports detailing the

exact monies being unlawfully withheld and the necessary

documentation to back those claims. I had performed this same

exercise, no less than three (3) times, for the previous attorneys of

record, the VP of Human Recourses, and the CFO of Vizant

Technologies, LLC. And for the fourth (4th) time, the reports were

submitted to Vizant Technologies, LLC, Capital Solutions, Inc.,

Frank Seidman, Lane Wiggers, Joseph N. Bizzarro, Read

Gignilliant, and Douglas Duerr.

54. On or about March 20, 2014 I was invited to meet with Douglas

Duerr and Read Gignilliant of the law firm ELARBEE

THOMPSON WILSON & SAPP, located in Atlanta, GA to discuss

the withheld compensation, expenses, and the IRS filing. Once

again, the "meeting" was nothing more than an attempt to extort,

coerce, and threaten me. Mr. Gignilliant was quick to inform me

that I would not be given the monies owed and the false 1099

MISC form would not be withdrawn from the IRS *unless,* I agreed to the settlement demands. At the same time Mr. Duerr and Mr. Gignilliant were squeezing me for a settlement in the conference room of ELARBEE THOMPSON, the ELARBEE employees were in their offices were engaged in extensive research regarding "stalking protective order", "cyber stalking", "attack website" and "work place violence".

55. On March 25, 2014, I was on the receiving end of the defendants' third attempt at extortion/coercion, as Mr. Douglas Duerr emailed me to reiterate Mr. Gignilliant's message from the previous meeting, "withdrawal of the 1099, …in return for your (and Mrs. Davis) agreeing to all of the other settlement terms." Once again, I let counsel know it was illegal for them to attempt to extort a settlement from me using a manufactured and knowingly false tax document; either I worked, earned the monies, they paid me the monies, and now I owe the federal government 30% in income tax, *or* I **did not** work, earn the monies, and/or get paid and therefore would not owe any taxes. But under no circumstances could

Vizant dream up false claims of earnings and payments and report that to the IRS as a way to negotiate with me.

56. On or about April 1, 2014 I learned Bizzarro had been fired by his two previous employers, both in which he held the position of Chief Operating Officer and/or Chief Financial Officer and both firings were in the wake of the employers having to file for bankruptcy relief. On or about April 11, 2014, I updated the website www.nocapitalsolutions.com to include information regarding Bizzarro's previous employment history and Bizzarro's role in the demise and subsequent bankruptcy of those employers.

57. On April 11, 2014, and immediately following the posting of Bizzarro's employment history, and within as little as five (5) minutes of the Defendants and the attorneys at ELARBEE logging off my website, from their IP addresses: 69.137.140.84, 173.49.35.242, and 66.28.216.186, I was sent an email which read: *"I know where you live...How are the boys? Safe and secure?"* **(Exhibit I)**

The "boys" was a reference to my then two (2) minor sons. I immediately notified Capital Solutions, Inc., Frank Seidman, Lane Wiggers, and the attorneys at ELARBEE that Bizzarro was

sending me threatening communication and that I was terrified and wanted to end our differences.

58. I received a second email from the same email address; Whitchurchfamily@gmail.com. This email threatened a website would be "dedicated to Whitchurch". And true to that threating communication, Kevin Davis of Vizant Technologies, LLC immediately purchased the domain "juliewhitchurch.com".

**(Exhibit J)**

59. On April 10, 2014, I was once again invited to meet with Douglas Duerr at EALRBEE THOMPSON, on the fraudulent pretense that the withheld compensation and expenses would be paid. The meeting, which was conducted five (5) days before the Cobb County Superior Court hearing on Vizant's motion for a preliminary injunction, was nothing short of the defendants' forth (4th) attempt to extort, coerce, and threaten me. Mr. Duerr reiterated the defendants' previous threats: my money would not be returned and the false IRS earning statement would not be withdrawn, unless I agreed to release Vizant Technologies, LLC, Joseph Bizzarro, Lane Wiggers, Frank Seidman, Capital

Solutions, Mr. Gignilliant, Mr. Duerr, and ELARBEE
THOMPSON of all wrong doing and agreed to a permanent prior
restraint against issuing any warning to the public or law
enforcement regarding the defendants fraudulent business scheme
and organized crimes.

60. The defendants (Vizant, Capital, Seidman, Wiggers, Askinas, and
Bizzarro) knew they would not be able to successfully defend
themselves against my allegations of misconduct and financial
wrong doing, so they conspired with Mr. Duerr and Mr. Gillianant
and put forth a false narrative that I was a disgruntled employee
stalking my former employer and their family members. The
defendants' plan was to fabricate evidence to implicate me in the
crime of stalking and have the Cobb County Superior Court issue
a preliminary/permanent restraining my speech and presenting
me in a false light to the community so my allegations of financial
wrongdoing and a PONZI scheme being executed by Capital
Solutions, INC would not be taken seriously. After conspiring
with the persons associated with the enterprise, Mr. Duerr and
Mr. Gignilliant prepared Bizzarro to provide the court with the

false and inflammatory testimony that I and Davis were stalking him, his minor son, the board members and their families. Mr. Gignilliant sprung the knowingly false "cyber stalking" and "work place violence" claims, researched by his employees, on me during his opening statements of the April 14th, 2014 hearing on Vizant's motion for a preliminary injunction. I was too stupid to know I could have objected to the newly fabricated claims. During the preliminary injunction hearing held on April 14th and 16th of 2014 in Cobb County Superior Court and despite suing me and Davis for misappropriation of trade secrets, tortious interference, defamation, and breach of confidentiality in the Ga action, Bizzarro stated during the PI hearing:

> "We get no other joy out of being in this courtroom other than to get you to stop stalking, harassing, intimidating, causing distress for board members and their families. That's the only reason we're here today. There's no other reason." (Cobb County Superior Court, April 2014, Preliminary Injunction Hearing Bizzarro testimony, page 39, lines 20-24).

61. I was prepared to defend the allegations contained in the Vizant complaint, i.e.; misappropriation of trade secrets, tortious interference, breach of confidentiality, etc. Operating pro se, I was

ill prepared to defended myself against the fabricated stalking allegations sprung on me during the preliminary injunction hearing and, as stated above, I lacked the legal knowledge to know I could have objected to newly manufactured claims of the defendants and the trickery of the ELARBEE THOMPSON attorneys.

62. During the April 14th and 16th, 2014 Preliminary Injunction hearing, Joseph Bizzarro testified I was stalking his, then, fifteen (15) year old minor son through repeated and harassing Facebook communications. He testified:

> "I am not in fear personally for my safety. You know, I am a big boy. But when she started scaring my family and reaching out to my son multiple times, and it wasn't just a friend request, it was a Facebook page set up that was very derogatory toward me and others, my son was very scared, my wife was scared,…" (Cobb County Superior Court, Preliminary Injunction Hearing Bizzarro testimony, page 6, lines 24 & 25, page 7, lines 4).

When questioned by the Vizant Technologies, LLC counsel of

ELARBEE THOMPSON:

> "Mr. Bizzarro, it's been suggested that your son is 15 years old. Is that accurate?"

Bizzarro testified: "That is correct." (Preliminary Injunction

Hearing Bizzarro testimony, page 8, lines 5-7).

63. Additionally, Bizzarro offered sworn testimony during the PI

hearing which included:

1)    Whitchurch was stalking and harassing Mr. and Mrs. Frank
Seidman, so much so, that Mrs. Seidman was "in fear for her life"
and it was necessary for Vizant Technologies, LLC hire armed
gunmen to provide the Seidmans with protection, 24 hours a day
for several weeks.  Mr. Seidman was the "money man" and was in
charge of the financial matters for the enterprise, Vizant
Technologies, LLC.

2)    The Pennsylvania State Police viewed Whitchurch as a
threat, and upon learning she traveled to Pennsylvania in
January of 2014, were dispatched to the Vizant Technologies, LLC
office in Chadds Ford, PA and remained at that office for three (3)
days "waiting to arrest" Whitchurch "had you shown up".

64. Based on Bizzarro's inflammatory and perjured "stalking"

testimony and the misconduct of the attorneys of EALRBEE

THOMPSON the court issued a preliminary injunction restraining

my civil rights.

65. Knowing Bizzarro to be a pathological liar and after witnessing, in

every single interaction with Mr. Gignilliant and Mr. Duerr, their

aversion to and/or perversion of the truth; combined with the

FACT that; 1) I would not and did not have ANY contact with a

27

purported Bizzarro minor child, and 2) that Bizzarro **had no**
minor 15 year old son at the time of his testimony; I sought the
records and/or invoices from: 1) Strike Force, the purported
private security firm, hired by Bizzarro for the Seidman home, 2)
*Any* records from the Pennsylvania State Police Department
relating to myself, Vizant Technologies, LLC and/or this matter,
and 3) birth records and/or any evidence of Bizzarro's fictional 15
year old son. The documents received, and more importantly,
those not received because they did not exist, showed Bizzarro had
committed gross perjury, as:

1) No such 24 hour a day, two-week security had been
provided at the Seidman house. In fact, Mrs. Seidman
adamantly rebuffed the security Bizzarro had hired and
ordered them off her property immediately upon their
arrival. Mr. Bizzarro was aware of this at the time of his
April 2014 testimony, as Mr. Jeffrey Martin, VP of
Operations for Strike Force, had emailed Mr. Bizzarro three
(3) months prior and informed him that Mrs. Seidman had
dismissed the security team immediately upon their arrival,

at her home. Mr. Bizzarro responded to Mr. Martin's email with "If that is what she wants. Pull the security from the home. **(Exhibit K).** (As well, fast forward to 1 year later in the late spring of 2015, I had the opportunity to depose Mr. Frank Seidman on the matter and Bizzarro's sworn statements and testimony. Mr. Seidman refuted Mr. Bizzarro's preliminary injunction hearing testimony and testified he was *never* in fear for his life or the life of his wife and that he opposed Bizzarro's hiring of private security company.

2) The PA State Police *never* viewed Whitchurch as a threat, had any knowledge of Whitchurch and/or her travels to PA, and had no record of any measures taken to provide security for the enterprise, Vizant Technologies, LLC. In fact, there was not even a record of a random "drive-by" performed and/or a request made for such, by the enterprise or any of the persons associated with the enterprise.

**(Exhibit L)**

3) By Mrs. Bizzarro's own statements, the statements of her

children, Joseph N. Bizzarro's affidavit[5] , and the birth

records of the Pennsylvania, Delaware, New York,

Maryland, and New Jersey Departments of Health, Lorraine

and Joseph N. Bizzarro have three (3) adult children, none of

which were minors and/or a 15-year-old son at the time of

Bizzarro's PI hearing testimony.

4) I obtained my Facebook activity records from Facebook

Inc. The records showed I did not initiated any "friend

requested" or any other contact, to *any* person from

December of 2013 through November of 2014.

66.  In short, Bizzarro testimony regarding: 1) me stalking his 15-year-

old son through repeated Facebook contact; 2) the PA State Police

waiting at the Vizant corporate office for three days with the

intent of arresting me; 3) Mrs. Seidman being so afraid of me she

was "in fear for her life"; 4) the Vizant employees' health

insurance was canceled because there was a "error" on the part of

United Healthcare; and  5) that there had only been one (1)

---

[5] "I am married to Lorraine David Bizzarro.  Natalie C. Bizzarro is our daughter.  Joseph Bizzarro, JR. and Andrew J. Bizzarro are our sons.." Joseph N. Bizzarro

occasion in which the Vizant payroll was delayed, and on that occasion it was the fault of the payroll processor, ADP, Inc. was nothing more than a conspiracy by the defendants and their attorneys to concoct a false narrative of harassment and stalking as a means to discredit my allegations of fraud, mismanagement, and gross financial wrongdoing.

67. I notified Mr. Duerr, Mr. Gignilliant, Frank Seidman, and Lane Wiggers that I had discredited Bizzarro and his testimony. I shared with them the newly discovered evidence rebuffing *ALL* of Bizzarro's testimony. They took no action to correct Bizzarro's testimony with the court or curtail Bizzarro's misconduct moving forward.

68. As so on it went, by September 10, 2014 I had caused *Non-Party Request for Documentation* to be served on: Foot Locker Inc., Hilberto's Mexican Food, Jamba Juice Company, Locust Lumber, and the Dallas Fort Worth International Airport. All of which Vizant was suing for breach of contract and all of which I contend were the victims of the enterprise's deceptive business practices and fraud. Additionally, I served the same on Google Inc, seeking

the identity of the account holder behind the threatening "I know where you live. How are the boys? Safe and secure?" emails. I caused a NOTICE to PRODUCE to be served on Bizzarro, for the birth certificate of his purported minor son as well as the threatening Facebook communications purportedly sent from me to him.

69. Desperate to silence and prevent me from exposing Bizzarro's perjured testimony, the attorneys misconduct, and the racket of the enterprise and persons associated therewith, the defendants conspired to and did manufacture more evidence to implicate Whitchurch in the crime of stalking. Bizzarro produced two Facebook "friend request", a post card, and a declaration swearing I had sent the harassing and threatening communications to Bizzarro and his family, in violation of the preliminary injunction. **(Exhibit M)**

70. In addition to my and Davis' sworn declarations and testimony denying we had sent the purported friend request, there were obvious graphical errors in the communications which showed conclusively they must have been manufactured by the

defendants. It was simply a "cut and paste" job. Specifically; 1) there is no profile picture of Whitchurch or Davis on either of the request; 2) the Facebook trademark/logo is glaringly absent from both request; and *the most obvious of all*; 3) both Facebook notifications depict both were sent on the same day "September 14, 2014". However, the notification to Lorraine Bizzarro purportedly sent by Davis on September 14, 2014 depicts the 14th as a *Wednesday*. The notification purportedly sent by Whitchurch to Natalie Bizzarro on the same day, September 14, 2014, depicts the 14th as a *Sunday*. The postcard was obviously manufactured and did not travel through the United States Postal Service. The postnet code depicted on the front of the card is not an authentic United States postnet code.

**(Exhibit N) (Exhibit O)**

71. By late October 2014, the defendants had conspired to violate federal law and use the fabricated evidence in a knowingly vexatious Motion to Show Cause seeking my incarceration for purportedly sending the communications. I immediately served Bizzarro with a Notice to Produce the original (meaning a digital

version) Facebook communications received on both Wednesday and Thursday, September 14, 2014 and the original postcard, not a photocopy, purportedly sent to Bizzarro at the same time. Vizant Technologies, LLC and/or Bizzarro were unable to produce *ANY* of those items.

72.  On November 8, 2014, and moments before I was scheduled to testify in the Cobb County Superior Court, on the Vizant Motion to Show Cause, David Askinas, a Vizant Technologies, LLC Vice President, fraudulently represented himself as an attorney and asked to meet with me and Davis to discuss a possible settlement. Mr. Askinas showed us to a small conference room located in the Cobb County Superior Court and, in an obvious attempt to threaten, harass, and scare the bejesus out of me, he told a hair-raising story of his college friend who was accused of rape, was innocent, represented himself pro se, was found guilty, spent the next 8 years in federal prison, was violated in unspeakable ways, and "was never the same again". When I refuted the tale as a gross and deliberate attempt to oppress, harass, and intimated me moments before testifying, Mr. Askinas became enraged, offered

me $150,000 and threatened that if I did not take it and agree to their settlement demands, they would "make this go on forever." I made my way to the door immediately.

73.    Faced with an imminent defeat if the Facebook communication, birth certificate of the purported minor son, and postcard could not be produced, Vizant abandoned the vexatious lawsuit and preliminary injunction, by way of a Motion to Voluntary Dismiss and in late January of 2015 the Cobb County Superior Court issued an ordered granting the dismissal of the Vizant Technologies, LLC malicious litigation. Simply put, after a full year of making false claims, manufacturing evidence, threatening and extorting me, and obstructing justice, when boxed in to produce the authentic Facebook communication to his daughter and wife, real proof of a minor child, and any communications from me to that child, Bizzarro and the enterprise were unable to do so.

### c. Eastern District of Pennsylvania, District Court

74.    Immediately thereafter, and with the intent "to make it go on forever", upon information and belief, Joseph N. Bizzarro, David

Askinas, Frank Seidman, Lane Wiggers, and Richard "Dick" Corl[6]
conspired with their Pennsylvania attorneys; Mr. Edward T.
Kang, Mr. Gregory Mathews, and Mr. Jason Powell of the law
firm of KANG HAGGERTY & FEBROYT, LLC; to leverage the
personal relationship between Mr. Corl and Judge Harvey Bartle,
III, of the Eastern District of Pennsylvania District Court, and
thereby corruptly influenced Judge Bartle to insure he would be
designated as the trial judge in a civil action against Whitchurch.
In January of 2015, and days after they dismissed the vexatious
Cobb County action, Vizant Technologies, LLC and Joseph N.
Bizzarro filed a complaint in the Eastern District of Pennsylvania
District Court. As before, they sought a preliminary injunction.
For the most part, the complaint was the same as the Cobb
County action. However, in the PA action, and to avoid litigation
on the manufactured Facebook communications and Bizzarro's
prior perjured testimony, the defendants contended I was
misappropriating trade secrets and disclosing confidential

---

[6] Dick Corl was a Vizant Technologies, LLC board member and shareholder at all times relevant to
the claims herein.

information. Judge Harvey Bartle, III was assigned as the trial judge. in the Eastern District of Pennsylvania.

75. From the onset of the litigation, Mr. Kang and Mr. Mathews began engaging in ex parte communications with Judge Harvey Bartle, III, corruptly influencing him to assist them in coercing me to settle the litigation by aiding them in discrediting and oppressing my allegations of the "Ponzi" like financial racket being run through Vizant Technologies, LLC by the defendants.

76. In January of 2015 and with a well devised plan to bolster the knowingly false narrative of trade secret misappropriation, the enterprise employed the services of Gary Hunt of IT ACCELERATIONS to perform forensic testing on a company issued laptop computer and USB devise which I had returned to Vizant Technologies, LLC in December of 2013.

77. On January 29th and 30th of 2015 Mr. Kang was discussing with Gary Hunt, via email, the "forensic analysis of Whitchurch computer and Davis computer" and the "Davis computer issues". Mr. Kang has a 20 minute "Teleconference with G. Hunt re

preliminary opinion". Mr. Kang "Review[s] G. Hunt's preliminary opinion" for 10 minutes and emails the same to David Askinas.[7]

78. Two days later and on February 2, 2015 Mr. Kang emails G. Hunt and instructs him to include the comments of the David Askins in his "Forensic" report: "re updating his draft report to incorporate D. Askinas' comments".[8]

79. On February 9, 2015 Mr. Kang spend another 30 minutes "revise[ing] G. Hunt's preliminary opinion re Whitchurch computer forensic analysis".[9]

80. Later that day Mr. Gary Hunt "declare[d] under the penalty of perjury" to the "FORENSIC REPORT OF GARY HUNT" and the report is then offered in support of the plaintiffs Motion for Preliminary Injunction.[10]

81. Two days later, February 12th, Mr. Mathews emails Mr. Hunt regarding "further revisions to IT forensic examination report". On March 4, 2015 Mr. Kang emails G. Hunt "re USB analysis" and by the 6th Mr. Kang has hatched the false narrative that I

---

[7] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 12 and 13 of 50
[8] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 16 of 50
[9] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 17 of 50
[10] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 8, Pages 5-8

have stolen a second USB device, as he notes in his billing records: "Teleconference with G. Hunt re Whitchurch and USB device improperly kept, emails to/from G. Hunt re same; teleconference with D. Askinas re same". On the same day, Mr. Mathews is at work emailing Mr. Hunt regarding "USB devise issue with Gary Hunt" and reviewing the revised forensic report. [11]

82. By March 7, 2015, Mr. Kang and G. Hunt were email and discussing the production of a "supplemental report" showing a "stolen USB device" and, low and behold, two days later March 9, 2015, Mr. Kang is at work putting pen to paper and "revise[ing] G. Hunt's supplemental forensic report relating to Whitchurch having another USB drive".[12]

83. The following day, March 10, 2015, Mr. Kang has a "Teleconference with G. Hunt re supplemental report and confidential information in Whitchurch's possession". Continuing with his mission to implicate me in a theft, Mr. Kang continues "revising" the forensic opinions of Mr. Hunt, he emails D. Askinas and both sets of attorneys previously representing plaintiff in the

[11] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 19, 27, and 29 of 50
[12] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 29 and 30 of 50

GA action, the law firms of Duane Morris LLP and Elarbee Thompson Wilson & Sapp, to discuss "issues relating to the USB device" and "re chain of custody and the USB drive". Mr. Kang wraps up his day by further "review[ing] and revise[ing] G. Hunt's revised supplemental report" and then emails Mr. Hunt the new improved supplemental forensic opinion; complete with Mr. Kang's thoughts and opinions.[13] Simply put, up to this point Mr. Kang and Mr. Mathews have crafted 80% of the "expert forensic report" and 100% of the bull crap included therein.

84.    On March 13, 2015 Mr. Gregory Mathews has a "Telephone call with Gary Hunt re chain of custody issues" and immediately thereafter the law firm of KANG HAGGERTY & FEBROTY, LLC *hires* the law firm of ELARBEE THOMPSON and the services of Mr. Douglas Duerr to provide the court with knowingly false and fabricated testimony and evidence.  At once Mr. Mathews and Mr. Duerr begin conspiring "re chain of custody issues" and it is arranged for Mr. Duerr to establish a knowingly false chain of

---

[13] ED of PA District Court, Civil Action 2:15-cv-00431-HB, Doc. No. 129-2, Page 31 and 32 of 50

custody on the fabricated "stolen" USB device with his deposition testimony.

85. On March 20, 2015 Douglas Duerr is deposed by both Mr. Mathews (his client) and Whitchurch. Mr. Duerr testified the computer Whitchurch returned to the Vizant corporate office in PA, was shipped from there to the offices of ELARBEE THOMPSON sometime in March of 2014, where it sat in his office for a couple of months before being moved to a closet. No explanation can be given as to why the computer I returned to Vizant in PA is shipped to the attorneys in GA.

86. Knowing of Mr. Bizzarro's and Mr. Duerr's propensity to manufacture evidence and commit perjury, I knew they were up to no good. So, I questioned Mr. Duerr extensively as to whether he had allowed Bizzarro access to the computer and/or USB device, that I had returned to PA but that was now in GA, during Bizzarro's stay in Atlanta of April 2014 when he attended the Cobb County action PI hearing.

87. Mr. Duerr adamantly denied Mr. Bizzarro was at the offices of

Elarbee Thompson and/or had any access to the returned

equipment.

> By Whitchurch: "He's in town, right?"
> Duerr Answer: "Mr. Bizzarro, yes."
> By Whitchurch: "And so does he have access to any of this?"
> Duerr Answer: "No."
> By Whitchurch: "None. Was he in your office?
> Duerr Answer: "Not that I recall."
> By Whitchurch: "Not that you recall, but you're not certain?"
> By Mr. Mathews: "Objection."
> By Whitchurch: "Was he in this building?"
> Duerr Answer: "I don't know if he was in this building. I am fairly
> confident that he was not in the office."
> By Whitchurch: "You are fairly confident he was not in this office.
> Have you ever met with Mr. Bizzarro in this office?"
> Duerr Answer: "Not that I recall."
> By Whitchurch: "It's only been a year, Doug. Is your memory that
> bad?"
> By Mr. Mathews: "Objection."
> By Whitchurch: "You can't remember if he was here or not. Is that
> what you're saying? You can't tell me if you met with a client in this
> office?
> Duerr Answer: "I don't recall."
> By Whitchurch: "Who—okay. Who could? Could you get somebody to
> pull up your schedule and let you know if he was here in this building?
> It's important. I mean, I'm saying he was tampering with evidence. I've
> been screaming that all along. You've got unlocked evidence in your
> office. He's here in town.
> By Mr. Mathews: "Objection. This is not a question, Ms. Whitchurch.
> You need to ask a question to the witness---"
> By Whitchurch: "Was he here?"
> By Mr. Mathews: "---rather than give your closing argument."
> Duerr Answer: "I don't ever recall him ever being in this office, no."

88. In direct contradiction to Mr. Duerr's, under the penalty of perjury

testimony and his blatant attempt to conceal the fact that Mr.

Bizzarro had access to the Whitchurch computer, the billing and timekeeping records of ELARBEE THOMPSON detail an entry of over seven (7) billable hour, in which Mr. Duerr and Mr. Bizzarro meet on Sunday April 13, 2014 at the offices of ELARBEE THOMPSON, the day before the Cobb County action.

89. On March 31, 2015 Mr. Mathews makes his final "edits" and revisions and emails "re supplemental report issues; review[s] and edit[s] supplemental report. The following day Mr. Kang reviews "G. Hunt's supplemental IT forensic report". The same day, April 1, 2015, Gary Hunt of IT Acceleration declares under the penalty of perjury to the "SUPPLEMENTARY REPORT OF GARY HUNT".[14] In the new and improved forensic report, Mr. Hunt declares that he received a "second USB Drive" from "Vizant's counsel Elarbee Thompson via FedEx...". The supplemental report contains the following statements: "I determined...", "I was asked by counsel Kang Haggerty & Fetbroyt LLC to determine...", "After my review and analysis, I determined...", "I was told that the Second USB Drive is the only USB storage device Vizant received

---

[14] ED of PA District Court, Doc. No. 129-2, Page 48 of 50, Doc. No. 130-4, Page 2 of 37

from Whitchurch....", "Accordingly, I believe the USB...", "My analysis and conclusion is based on the following..."

90. All in all, the billing and timekeeping records of IT Acceleration and Mr. Gary Hunt show that Mr. Hunt spent less than two hours (2) writing his "FORENSIC REPORT" and the "SUPPLEMENTAL" report. Meanwhile, Mr. Kang and Mr. Mathews logged well over seven (7) hours "revising" and crafting the false narrative of the "Forensic" reports of Gary Hunt.

91. On April 10, 2015 and to manufacture more fake and damaging evidence, the defendants[15] conspired to, and did, corruptly influenced Mr. Mathews to *hire* Mr. Gignilliant and Mr. Duerr, for the purpose of Mr. Duerr coaching an ELARBEE THOMPSON employee, Karen Larsh, to give knowingly false and misleading testimony through a deposition and declaration, that I was violating the Georgia preliminary injunction. Despite the FACT that when Vizant voluntarily dismissed the vexatious complaint the Cobb County preliminary injunction was dissolved as a matter of law. Mrs. Larsh's knowingly false and misleading declaration

---

[15] Vizant Technologies, LLC, Capital Solutions, INC, Joseph N. Bizzarro, David Askinas, Frank Seidman, Lane Wiggers

and deposition testimony was then presented to the court with the intent of violating federal law and having my civil rights infringed upon. **(Exhibit P)**

92.  Five (5) days before the Preliminary Injunction hearing in the ED of PA District Court, April 9, 2015, I had still not received *ANY* Rule 26 disclosures from the defendants or the attorneys at KANG HAGGERTY & FETBROTY, LLC. I researched Mr. Gary Hunt and learned he lacked the necessary education and experience to be deemed an "Expert Witness" in computer forensics. I contacted Mr. Kang, Mr. Mathews, and Mr. Powell and challenged Mr. Hunt's credentials and demanded the required Rule 26 disclosures. The following email conversation took place between Mr. Mathews, Mr. Kang, Mr. Powell, and myself:

April 9, 2015

**By Whitchurch:** "Gentlemen, Pursuant to Rule 26(2)(B)(iv), I need to know if the expert has been published in the previous 10 years. Pursuant to Rule 26(2)(B)(v), I need to know all other cases he has provided expert testimony in the previous 4 years. Pursuant to Rule 26(2)(B)(vi), I need to know what his compensation will be for his testimony."
**By Mathews:** "Let's discuss tomorrow."

April 10, 2015
**By Whitchurch:** "Is this discussion still on your agenda today?"
**By Mathews:** "Plaintiffs will supplementally produce disclosures regarding the expert over the weekend."

**By Whitchurch:** "Greg, 'over the weekend' isn't going to work for me. Your 'expert' doesn't appear to be much of an expert. Looks like he's still wet behind the ears. Maybe I've peeled the wrong guys onion. But the Hunt I read about has 1 case under his belt and one publications. You let me know if that's not the same Hunt and how much his "expert" testimony is costing. You have this information available and I expect you to send it promptly."

93. By the following day, April 11, 2015 and after improperly influencing Judge Bartle to go along with their willful intent to deprive me of my civil liberty of due process; Mr. Kang, Mr. Mathews, and Mr. Powell still refused to make the mandatory Rule 26 disclosures. Simply put, they had improperly arranged the outcome of the trial with Judge Bartle, IIII and ensured he would not hold them accountable for flagrant infringement of my civil right to due process.

94 On Sunday, April 12, 2015 at 1:46 p.m., and three (3) days before the preliminary injunction hearing, I received, for the first time, the "SUPPLEMENTAL REPORT OF DAVID YARNALL" from Mr. Kang and Mr. Mathews. Mr. Yarnall, declares under the penalty of perjury, that he has "added information to this report which came to light in preparation for the Preliminary Hearing. Most of this report has been repurposed from Gary Hunt's prior reports, with supplemental information provided by me to create

this one all-encompassing report." It is the first time I learned of Mr. Yarnall and his report.

95.    Four hours later, on April 12, 2015 at 5:44 p.m. I received a second email from the lawyers, this one instructing me to disregard the earlier email and SUPPLEMENTAL REPORT and attached find a new and improved "SUPPLEMENTAL REPORT" of David Yarnall. Simply put, a supplement to the Yarnall supplement, of the Hunt supplement, to the original "Forensic Report of Gary Hunt".

96.    The Yarnall SUPPLEMENTAL REPORTS, received that Sunday, are identical with one exception, in the second report, item #52 has been supplemented and states: "52) Based on the analysis set forth in this report, it is **our** opinion within a reasonable degree of **professional certainty** the conclusions set forth below:" (emphasis added) The previous report stated *no* certainty as to the conclusions of Gary Hunt.

97.    On April 15, 2015, the preliminary injunction hearing was held before Judge Harvey Bartle, III, in the ED of PA District Court, with Mr. Kang calling his first witness, David Yarnall of IT

Acceleration. And despite a combined ten (10) hours of billable

time in email correspondence and teleconferences with Gary Hunt

regarding *Mr. Hunt's* examination and analysis as set forth in his

"Forensic Report" and "Supplemental" report, an additional seven

(7) billable hours "revising" those reports and the Fact counsel

logged less than 30 minutes in similar conversations with David

Yarnall, Mr. Kang suborns the following perjury from David

Yarnall during the April 15, 2015 preliminary injunction

(emphasis added):

Q. Have you formed an opinion regarding the **investigation that you have concluded?**
A. I have. (PI Hearing, April 15, 2015, page 58, lines 7-9)
Q. Are you saying the USB device that **you examined** is a different one from the USB device that was plugged into the computer?
A. That is correct.
Q. Your opinion, is that opinion within a reasonable degree of **scientific certainty?**
A. It is.
Q. And do you have your written opinion in the form of a written report?
A., I do.
Q. Would you turn Tab P-50?
A. I'm there.
Q. Mr. Yarnall, is that your written report?
A. It is.
Q. And that report contains your opinion?
A. It does. (Preliminary Injunction Hearing Testimony, April 15, 2015, page 58 @ line 24-25, page 59 @ line 1-5 emphasis added,)

Q. Mr. Yarnall, the USB device that **you received**, **based on your analysis**, files—Vizant files, 130 of them, they were created or accessed on January 22, 2014, right?

A. Correct. (Preliminary Injunction Hearing Testimony, April 15, 2015, page 81 @ line 24-25, page 59 @ line 1-5, emphasis added)

98. From there, Mr. Yarnall testifies to the basis for his opinion in which he describes using a forensic image of the hard drives and "Voom HardCopy". Mr. Kang again starts his questioning with "So the analysis **you've done**..." The subornation of perjury goes on and includes: "And what did **you find**?" Mr. Yarnall then goes in depth as to his testing of the USB stick that he received from Vizant "with my understanding that it was a USB stick that Julie Whitchurch has returned with her laptop." He goes on to testify that "So what **we did as a test** is **we purchased** yet another SanDisk ...", "the test that **we did** was we used the received USB device and **we plugged** it into multiple computers...", "shows the USB stick that **we purchased** and **we did the same test** as a control,..." "as **we plugged** it into different computers". The subornation continues with Mr. Kang's examination of the witness:

Q. And the one in the middle picture, is the picture relating to the **USB device that you received and examined**?
A. That is correct.
Q. And the third one on the bottom, this is the one that you, **Mr. Yarnall, you bought yourself and examined independently**?

A. That's correct.

99. Despite Mr. Yarnall's, under the penalty of perjury testimony, not once but twice, that he "bought" himself and "examined independently" the USB device; the billing and timekeeping records of Mr. Gary Hunt's, IT Acceleration's, David Yarnall, and KANG HAGGERTY's depict Gary Hunt "purchase and test SanDisk Cruzer USB Device for independent testing; Review results with David and add to presentation". Mr. Hunt details the cost of the purchase at "$10.59". There is nothing in the billing and timekeeping records of David Yarnall to suggest he "bought" the USB devise or "examined independently" the computer or USB returned by me.

100. Despite testifying **"Yes"** when questioned "But did you retest anything" the billing and timekeeping records of Gary Hunt, David Yarnall, IT Acceleration, and KANG HAGGERTY contradict the testimony suborned from Mr. Yarnall. By Mr. Yarnall's own billing records it is clear to see Mr. Yarnall preformed **NO** testing, "retesting", or "independent examination" of the computer or the USB device(s). **(Exhibit Q)**

101. On April 15, 2015, Joseph N. Bizzarro, CEO, Vizant Technologies, LLC testified, during the Preliminary Injunction hearing. Mr. Bizzarro's testimony included his dealings with a prospective client, Amtrak, who subsequently became a Vizant Technologies, LLC client. Mr. Bizzarro testified that during the contract negotiation phase, things with Amtrak "slowed down", and that he had a conversation with Ed Genett of Amtrak, and at that time "they brought up two things", the lawsuits "and they brought up the web site." He went on to testify that because of Amtrak's concerns regarding Whitchurch's website www.nocapitalsolutions, it was necessary to drop the Vizant rates as a concession.[16]

102. During the PI hearing, Aeron Sharp, Vice President Vizant Technologies, LLC, testified she was working with a potential Vizant client, Tacoma Screw Products. She testified that she was informed by Tacoma they would not enter into a contract with Vizant Technologies, LLC because they were made aware of my allegation of Bizzarro's and Vizant's deceptive business practices. I had no knowledge Ms. Sharpe would be testifying or the basis of

[16] Bizzarro-Direct, page 142-143 Preliminary Injunction Hearing Transcript, Eastern District of Pennsylvania, April 15, 2015.

that testimony, in fact, there were *NO* Rule 26 disclosures made regarding Aeron Sharp or her testimony. After the PI hearing, and doubting the veracity of Ms. Sharp's testimony, suspecting she was a paid for witness, I contacted Tacoma Screw Products. I was informed, and provided with a sworn declaration from John Wolf, Ms. Sharpe's contact, the true reason and the one he shared with the Vizant representative, as to why Tacoma had declined to enter into a contract with Vizant Technologies, LLC. Their reasoning was 1) Tacoma had too many ongoing projects for their staff to take on any additional work load, and 2) he and his peers felt the Vizant fees were excessive. I subsequently learned, as suspected, Ms. Sharp had been given money and a promotion for her knowingly false testimony and that Mr. Mathews had worked to coach Ms. Sharp for hours to perfect what he knew, at the time, would be false and misleading testimony.

103. On June 30, 2015 Whitchurch deposed Mr. Bizzarro. One of the subject matters of that deposition was Mr. Bizzarro's interactions with Amtrak. Mr. Bizzarro contradicted his preliminary injunction hearing testimony and now testified the Amtrak pricing

reductions were not necessary because of me but rather because "Obviously, they [Amtrak] wanted a good deal." [17]

104. Throughout Bizzarro's deposition Mr. Kang just about comes apart trying desperately to lead Bizzarro through his perjured testimony, objecting to almost each, and every question posed. And, despite this, Mr. Bizzarro couldn't keep his previous lies straight and continued to contradict his prior testimony during the preliminary injunction hearing in April of 2015. Specifically, despite representing to the court that the Amtrak contract negotiations were necessary *only* because of my website, Mr. Bizzarro testified during his deposition there were "a lot of different things that gave them hesitance to do business with us." to include the pricing, service agreement, ***the number of clients Vizant Technologies had filed lawsuits against***, and the negative reviews on-line.

105. Despite knowing that Amtrak had expressed no less than five (5) concerns in doing business with Vizant (social medial concerns, the contract, the Vizant lawsuits, the rate, and the scope of the

---

[17] Bizzarro Deposition, June 30, 2015 (page 46, line 5-24, page 47, line 1-24, page 48, line 1-24, page 49, line 1-11).

services), the defendants[18] conspired to, and did, press forward with a false narrative that I was the reason, and *the only reason*, for the price reduction with Amtrak.

106. I called Mr. Kang and Mr. Mathews attention to the inconsistences in Bizzarro's testimony regarding the material facts. Neither took steps to correct Bizzarro's misrepresentations with the court, nor did they take reasonable measures to ensure the withheld information regarding the true reason for the contract negotiations, Amtrak "wanted to pay less", was brought to the court's attention.

107. From the onset of the ED of PA district court litigation and as detailed in the billing and timekeeping records of KANG HAGGERTY, the defendants[19] leveraged their improper relationship with the trail judge and engaged in a plethora of unlawful, unethical, and unbeknownst to me communications with Judge Bartle and his staff. The intent and outcome of their pattern of obstruction and abuse of process was to violate my

---

[18] Vizant Technologies, LLC, Capital Solutions, Inc., KANG HAGGERTY & FEBROYT, Joseph N. Bizzarro, Frank Seidman, Lane Wiggers, Edward T. Kang, and Gregory Mathews.
[19] Vizant Technologies, LLC, Capital Solutions, Inc., KANG HAGGERTY & FEBROYT, Joseph N. Bizzarro, Frank Seidman, Lane Wiggers, Edward T. Kang, and Gregory Mathews.

First, Fifth, and Seventh Constitutional rights by deprived me of the liberty of free speech and my property without a jury trial or the even the liberty of being able to: 1) to know the identity of the witnesses and the nature of their testimony prior to the witness being called to testify, 2) to know the opposing parties evidence prior to it being sprung on them in an "Supplemental Expert Forensic Report" two (2) days prior to trial. In fact, the first noted contact of those improper communications is detailed in the billing and timekeeping records of KANG HAGGERTY as Mr. Edward T. Kang and Mr. Gregory H. Mathews conduct their first of many "Teleconferences" with "the chambers" on February 23, 2015. Mr. Kang's billing records detail the communication as:

> "Teleconference with the chambers re teleconference with the court for preliminary injunction hearing; teleconference with G. Mathews re same."

Mr. Mathews contact with the court is detailed as:

> "...telephone call with the court...".

Simply put, it was the dress rehearsal between the Judge Bartle, Kang, and Mathews for a call scheduled the following day. I was

not invited to participate in Mr. Kang and Mr. Mathews private call with the court, nor was I ever notified as to the nature of that call.

108. The improper and unlawful contact with the "court", "chambers", and "Judge Bartle" continued from there. On March 5, 2015 and IMMEDIATELY following my notice to Mr. Kang and Mr. Edwards that I intended to conduct the deposition of David Jablonski, CFO of Vizant Technologies, LLC to disprove the notion Vizant's payroll and health insurance payment issues were the fault of the service providers and Bizzarro's allegations I was lying in those regards. Mr. Gregory H. Mathews immediately engages in a flurry of "Emails and telephone conference with the court re motion for deposition of Jablonski." I am not invited to participate in his call with Judge Bartle, nor am I notified that the two have had such communications. The following day, March 6, 2015, Mr. Kang spends twenty (20) minutes sending and receiving "E-mails to/from the court re defendants' motion to compel the deposition of Jablon;" As well, I am not invited to attend or notified of Mr. Kang's improper communications with the court. It is not until

**three (3) days later**, March 10, 2015, and after boundless communications between Kang, Mathews, and Judge Bartle, that I am invited to participate in a call with the court to discuss the compel motion I filed. Not surprisingly, and as the enterprise improperly arranged, the compel motion is denied.

109. The enterprise, and those persons associated therein[20], continued with the abuse of process and the communication with the court. Those improper ex parte communications with Judge Harvey Bartle, III, included, but were by no means limited to:

3/19/2015 GHM "Telephone call with Court…"
3/24/2015 ETK "letter to Judge Bartle.."
3/24/2015 GHM "..re conference with court.."
3/26/2015 GHM "Telephone call with court…"
4/7/2015 ETK "Call with the Court…"
4/7/2015 GHM "Conference call with Court…"
4/16/2015 GHM "Telephone call with Bartle's Chambers…"
5/7/2015 GHM "Emails re teleconferences with Court…
5/26/2015 GHM "Draft letter to Judge Bartle and emails re same"
5/27/2015 ETK "Teleconference with the Court…"
6/1/2015 ETK "Teleconference with the Court…."
6/3/2015 ETK "Teleconference with Judge's chambers…"
6/3/2015 GHM "Conference call with court…"
6/5/2015 GHM "Telephone calls and emails re conference call with court"
6/8/2015 GHM "Participate in conference with court…"
6/26/2015 ETK "Teleconference with the chambers.."
6/29/2015 ETK "Teleconference with the chambers…

[20] Vizant Technologies, LLC, Capital Solutions, Inc., KANG HAGGERTY & FEBROYT, Joseph N. Bizzarro, David Askinas, Frank Seidman, Lane Wiggers, Edward T. Kang, and Gregory Mathews.

6/30/2015 ETK "Review and revise enter (SIC) to the judge…"
6/30/2015 GHM "Conference call with Court.."

110. On or about May 24, 2016, Judge Bartle instructed the parties to make an effort to settle the litigation. For the next couple of days, I, Mr. Mathews, Mr. Kang, and Mr. Powell engaged in a heated email exchange in an unsuccessful effort to settle the differences. In addition to the afore mentioned improper and unlawful contacts between the attorneys and Judge Bartle, when the effort to reach a compromise failed, Mr. Mathews improperly communicated a blow- by- blow account of the Rule 408 discussions between me, him, Kang, and Powell, to Judge Bartle. Mr. Mathews and the defendants conspired to improperly influenced Judge Bartle to threaten me with contempt and imprisonment if I would not agree to the enterprises', and persons associated therein, settlement demands, which included a permanent prior restraint against my issuing any warnings, to the public or the authorities, of the racket they were running through Vizant.

111. As planned, and immediately thereafter, Judge Bartle threatened that he would hold me in contempt of court if I did not reengage in settlement talks. As ordered on May 28, 2016, I and the attorneys exchanged in email settlement talks. When I rebuffed the enterprises' settlement demands, the Rule 408 communications were, for the second time, improperly relayed to Judge Bartle by Mr. Mathews, Mr. Kang, and Mr. Powell.

112. With the threat of being put in jail if I did not settle, on or about September 15, 2015 Judge Bartle ordered me to appear before Magistrate Judge Hey, of the ED of PA District Court, for settlement talks with the defendants. During these discussions, the defendants used Judge Hey to attempt to coerce me to settle with the erroneous MISC 1099 wage and earning statement filed with the IRS. I was told, by Judge Hey, that if I would succumb to the enterprises', and persons associated therein, demands for a permanent restraint against my speech, the enterprise would withdraw the fraudulently prepared and filed MISC 1099 earning statement from the Internal Revenue Service. I let everyone at the table know it was illegal to extort a settlement from me with the

threat of reporting false wage payments to the IRS. Immediately thereafter, Judge Hey threatened that "things will get a lot worse" if I did not settle. I did not, and true to her word "things [got] a lot worse".

113. At the same time Mr. Kang and Mr. Mathews were using the court to coerce a settlement from me, I was pressing hard to conduct the deposition of David Yarnall, the expert forensic witness for Vizant Technologies, LLC. Simply put, I knew he had lied. I knew he did not conduct any testing of the computer or USB device and only plagiarized the report of his less educated and minimally experienced employee. The defendants[21] conspired to and did improperly prevent any reasonable attempt I made to conduct the Yarnall deposition. The schemes included, but were by no means limited to: demanding Whitchurch send counsel a three thousand dollar "deposit" for Mr. Yarnall's "time". I argued Mr. Yarnall charged two-hundred and twenty-five dollars ($225) an hour and I only wished to depose him for 90 minutes. As such, I mailed KANG HAGGERTY a check for four hundred dollars

---

[21] Vizant Technologies, LLC, Capital Solutions, Inc. KANG HAGGERTY & FEBROYT, LLC, Joseph N. Bizzarro, Frank Seidman, David Askinas, Lane Wiggers, Gregory Mathews, and Edward T. Kang.

($400) for the 90 minutes I planned to depose Yarnall. Simply put, I needed to ask Mr. Yarnall five questions to prove he had been bribed to manufacture evidence and give knowingly false testimony as the expert witness. Mr. Kang and Mr. Mathews argued the $3000 deposit was required per the "Federal Rules of Civil Procedure". When I pressed Mr. Mathews for the specific Rule cited, Mr. Mathews informed me he was no longer able to discuss the matter and Mr. Kang would now be in charge. Despite accepting service of David Yarnall's "Notice" of deposition, Mr. Kang and Mr. Mathews refused to produce Mr. Yarnall for the scheduled deposition. Likewise, when I moved to conduct the deposition testimony of Gary Hunt, the original tester of the computer and USB device; the defendants conspired with IT Acceleration, Mr. Yarnall and Mr. Hunt to provided the court with fabricated testimony that Mr. Hunt left the employment of IT Acceleration three (3) days before the PI hearing and was living in Chicago, IL and unavailable to testify. It was a bald face lie.

**(Exhibit R)**

114. Simply put, the enterprise and persons associated therewith[22] hired Gary Hunt of IT Acceleration to perform certain testing on the returned computer and USB device. His results were questionable at best, completely fabricated at worse. When I questioned Mr. Hunt's credentials, the enterprise and those persons[23] associated, conspired to, and did pay IT Acceleration and David Yarnall with the ill-gotten proceeds of the enterprise, to oppress Whitchurch from exercising her fundamental and constitutional rights to confront the witness. Based on the conspiracy, manufactured evidence, perjured testimony, false swearing, and illegal contact with the trial judge, the court granted the preliminary injunction and then set out to apply more pressure for me to settle by holding me in contempt of the unlawful obtained and issued preliminary restraint by fining me over $29,000.

115. On July 16, 2016 Vizant and Bizzaro moved for partial summary judgment. Throughout the late summer and fall of 2015, and in

---

[22] Vizant Technologies, LLC, Capital Solutions, Inc., KANG HAGGERTY & FEBROYT, Joseph N. Bizzarro, Frank Seidman, David Askinas, Lane Wiggers, Edward T. Kang, and Gregory Mathews.
[23] Vizant Technologies, LLC, Capital Solutions, Inc., KANG HAGGERTY & FEBROYT, Joseph N. Bizzarro, Frank Seidman, Lane Wiggers, Edward T. Kang, and Gregory Mathews.

response to the summary judgement motion, I filed well over 15 motions to conduct discover on the billing and timekeeping records of KANG HAGGERTY, ELARBEE THOMPSON, IT ACCELLERATION, and the declarations of Angie Gruntie, Vice President of Vizant Technologies, and David Askinas, "General Counsel" *ALL* of which had been disclosed for the *first time*, in the Vizant/Bizzarro Partial Motion for Summary Judgement, Monetary Award, and Permanent Injunction. At the same time, Mr. Kang and Mr. Mathews were in constant communications with Judge Bartle to ensure he was improperly motivated to deny each and every motion. It was a gross and deliberate abuse of the process, with the intent, and results, of ensuring the denial of: 1) a fair opportunity to confront the witnesses produced in their summary judgement motion; and 2) the jury trial I had demanded and was entitled to.

116. By the fall of 2015 I filed my first Motion for the Recusal of Judge Harvey Bartle, III. Not surprisingly, Judge Bartle denied the request. I filed a mandamus with the Third Circuit Court of Appeals detailing the fraud Mr. Kang, Mr. Mathews, Judge Bartle

and the enterprise had perpetrated on the Eastern District of Pennsylvania District Court. Judge Bartle and his codefendants[24] retaliated by conspiring to illicit US Marshall Jim Burke, assigned to the Eastern District of Pennsylvania, to contact me and threaten; if I continued to refuse to come to Philadelphia and "work things out" with the defendants, I would be brought to Philadelphia by physical force.

**116a**. On or about October 7, 2015 the law firm of KANG HAGGERTY & FEBROYT hired the law firm of POOLE HUFFMAN, to collect on what all new at the time was a fraudulent obtained judgment. I notified POOLE immediately of the fraud perpetrated on the Eastern District of PA district court and that the judgment had been satisfied. Just as they had hired the law firm of ELARBEE THOMPSON to provide them with false swearing's and manufactured evidence, KANG HAGGERTY & FEBROYT paid POOLE to lie, obstruct justice, harass and intimidate me and my

---

[24] [24] Vizant Technologies, LLC, Capital Solutions, INC, KANGE HAGGERTY & FEBROTY, Joseph Bizzarro, Lane Wiggers, David Askinas, Frank Seidman, Gregory Mathews, Edward T. Kang

family, all as a means to unlawfully seize my assets and person to oppress my free exercise of my Constitutional rights.

117. On September 19, 2015, Mr. Edward Kang emails P. Schenck at the US Department of Justice and communicates the knowingly false narrative, concocted by him and his codefendants, that I was committing a criminal act. **(Exhibit S)**

118. On January 8, 2016, Judge Bartle issued a summary judgement order, as to ALL the counts of the Vizant complaint, granting in part and denying in part both the Vizant Technologies, LLC/Bizzarro and the Whitchurch/Davis motions for summary judgment. The Court's order specifically *denied* the pleas, of both Vizant and Bizzarro, for a monetary award. **(Exhibit T)**

119. In late January of 2016, I began to wonder out loud if Judge Harvey Bartle had/or was orchestrating the outcome of other cases before him as he had done with my case. Specifically, I wondered if Judge Bartle was engaging in similar judicial misconduct in the Chaka Fattah Jr. and Congressman Fattah cases before him. I raised those questions to Mr. Mathews and Mr. Kang and

expressed my intent to raise those same questions with the counsel for Congressman Fattah.

120. Immediately thereafter, and despite denying Vizant's and Bizzarro's pleas for a "monetary award", in his summary judgement order, Judge Bartle ordered me to appear at a "damage trial". Despite the FACT Judge Bartle had already disposed of the entire litigation with the summary judgment order, Judge Bartle scheduled a trial and Vizant and Bizzarro put forth $5.5 million dollars in purported damages by way of "supplemental production" six (6) days before the scheduled March 2, 2016 trial.

121. I immediately moved to conduct discover on the $5.5 million dollars in legal fees and purported contract damages between Vizant and Amtrak. The Amtrak damages were based on the inflated and fraudulent cost savings projected by Vizant Technologies, LLC. **(Exhibit U)** Once again, acting in a concerted effort to violate my Fourth and Fifth Constitutional rights, Mr. Mathews, Mr. Kang, and Mr. Powell, with the blessings of Judge Harvey Bartle, refused to allow me any opportunity to conduct discovery or confront witnesses on the millions of dollars in

damages disclosed a week before trial. Seeing the mockery of the judicial system and experiencing the raping of my constitutional rights, I refused to appear in Judge Bartle's kangaroo court and participate in the fraud, given all the matters before Judge Bartle had already been decided in his final summary judgement order. I made it clear to the defendants that I was going to tell anyone that would listen "JUDGE HARVEY BARTLE, III IS FIXING CASES IN THE EASTERN DISTRICT OF PENNSYLVANIA".

121a. In March of 2016 I informed Todd Poole I was going on vacation and would be hiking on the Appalachian Trail. Mr. Poole caused a subpoena (from the Cherokee County Superior Court) to be issued for me to appear at a deposition. When I did not appear, Mr. Poole conspired with his codefendants to put forth the false narrative that Whitchurch had fled jurisdiction. Mr. Poole and/or his codefendants contacted Judge Vineyard in the Northern District of Georgia and put forth the false notion I was somehow fleeing jurisdiction on the Appalachian Trail. Judge Vineyard lacked jurisdiction in the PA litigation, the Cherokee County deposition, and the Fulton State Court wage garnishment, there

was NO legitimate reason for the defendants to communicate Whitchurch's whereabouts to Judge Vineyard as he lacked ALL jurisdiction over the Fulton State Court wage garnishment proceeding, the Cherokee County Court deposition, and the ED of PA civil litigation. **(Exhibit U2 *included herein)**

122. As so the sham trial went on without me. And in my absence, Judge Bartle awarded Vizant and Bizzarro over $2.5 million in damages, despite the fact the employment agreement between Vizant and myself, which was a focus of the litigation, limits damages to $150,000. The mock trial was a sham to get me to travel to Philadelphia, by this time Judge Bartle and the attorneys at KANG HAGGERTY had filed, at least two (2), arrest warrants under seal. Both without probable cause, an oath in support, or the signature of a judicial officer.

123. Simply put, there was no reason for me to appear, the fix was in when Judge Bartle improperly ensured he would be the trial judge presiding over this case and he worked in concert with the enterprise and persons associated therewith to knowingly violate my right to due process and seize my assets without affording me

a fair and impartial tribunal or an opportunity to by heard. By this point, Vizant and Bizzarro had paid witnesses and lawyers to knowingly fabricate evidence, I and my children had been threatened, and a US Marsal was attempting to scare the hell out of me with harassing phone calls. All to silence me from warning others of the criminal enterprise being run by Frank Seidman and his codefendants.

**123a**. After I told the defendants, to include POOLE, that I was aware Judge Harvey Bartle, III was fixing the outcome of the trials before him in the Eastern District of Pennsylvania, and I had proof that he had been improperly influenced the outcome in my case and that of Congressman Fattah's criminal case, the defendants, to include POOLES", harassment and intimidation of me and my family only intensified. And, on May 2, 2016, after conspiring with his codefendants[25], POOLE sent his henchmen to harass and intimidate my children. They were cornered in their yard and home, threatened & frighten, and questioned at length

---

[25] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, KANG HAGGERTY FETBROYT, Edward Kang, David Askinas, Gregory Mathews.

by these adults who demanded to know the hereabouts and place of employment of their mother **(Exhibit U3 herein)**

**123b**. Two days later, May 4, 2016, after conspiring with the codefendants[26], POOLE agreed and did give a false swearing that a "Judgment was obtained in the US. District Court of Northern District of Georgia" in the amount of "$29,262.40". **(Exhibit U4)**

124. Realizing I was going to continue to seek redress for their illegal conduct and call attention to the kangaroo court being conducted in Judge Bartle's courtroom, and with the intent to implead and obstruct the administration of justice, the defendants[27] improperly influenced Judge Bartle and Judge Vineyard to issue an unlawful warrant for my arrest.

125. The arrest/bench warrant was **unsigned** by an "Issuing Officer" and contained **no** oath in support of probable cause. On March 16, 2016, and six days after the erroneous arrest warrant was docketed, I filed a "Notice to the Clerk" of ED of PA requesting

---

[26] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, KANG HAGGERTY FETBROYT, Edward Kang, David Askinas, Gregory Mathews.
[27] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, KANG HAGGERTY FETBROYT, Edward Kang, David Askinas, Gregory Mathews.

the unsigned and void arrest warrant be taken off the public docket. [28]

126. On April 8, 2016, despite the warrant being void on its face and there being no case law to support their position, the defendants improperly influenced Judge Bartle to "transfer" the bench warrant from the Eastern District of Pennsylvania District Court to the US Marshals of the Northern District of Georgia District Court. The warrant was return by the US Marshal for the Northern District of Georgia as invalid, given Judge Bartle had no jurisdiction to have a Pennsylvania civil bench warrant executed in Georgia. From there, James N. Hatten, Deputy Clerk of the Northern District of Georgia, is improperly influenced and issues a "WARRANT FOR ARREST" of Julie P. Whitchurch "Charging her with: of Judge Harvey Bartle III for failure to appear at the contempt hearing."

127. Despite there being no oath offered in support of the issued arrest warrant, and Mr. Hatten lacking his "own" knowledge and the

---

[28] ED of PA Docket No. 269, in the civil matter 2:15-cv-00431-HB

authority to issue the warrant, the warrant is then forwarded to the USMS of the Northern District of Georgia for execution. Given Mr. Hatten had *NO* authority to have anyone arrested, his warrant is returned as unexecuted and invalid.[29]

128. On or about April 21, 2016, faced with a lack of jurisdiction in Georgia to have me arrested for a purported offense committed in Pennsylvania, and with the intent of further terrorizing me and oppressing my efforts to seek redress of the improper conduct in his courtroom and the racket being run through Vizant Technologies, LLC by Capital Solutions, INC. and the persons associated therein, Judge Harvey Bartle III, contacts Judge Russell Vineyard of the Northern District of Georgia District Court and corruptly influenced and persuaded Judge Vineyard to issue a warrant for my arrest for failure to appear in the Eastern District of Pennsylvania. Lacking *any and all* jurisdiction to issue an arrest warrant for a purported crime committed in Pennsylvania, Judge Vineyard does so anyway. Again, the arrest

---

[29] Exhibit G, 1:16-CV-00212-AT, DOC NO. 18, Northern District of Georgia District Court

warrant is deficient any probable cause, oath, or signature of a judicial officer.

129. In May of 2016, and with the intent to further the enterprise by unlawfully obtaining Whitchurch's wages, the enterprise hires attorney Mr. Todd J Poole, of POOLE HUFFMAN, to file a knowingly false affidavit for continuing garnishment with Fulton State Court, Georgia. In the affidavit, Mr. Poole, swore the judgement issued by Judge Bartle in the amount of "$29,262.40" was a "Judgment was obtained in the U.S. District Court of Northern District of Georgia." As a result of Mr. Poole's fraud on the court, my wages were illegally garnished.

130. On May 24, 2016, US Marshal Matt Keown and, no less than, four (4) other marshals descended on Whitchurch's home and force their way inside the house. I was made to undress and dress in full view of the arresting male officers. I beg to see the arrest warrant and told the charges, neither happens. I was shackled, ankles and wrist, in front of my children and placed in the front seat of Keown's car. As he drove us to Atlanta, I was questioned repeatedly. I ask again to see the warrant and told the charges.

Keown tells me I am being arrested because I failed to appear before Judge Bartle in Philadelphia. He goes on to tell me that if I do not go to Philadelphia on my own, I will be taken against my will. He threatens my employment and suggest my boss will be contacted if I do not adhere. We arrive at the Northern District of Georgia courthouse and I am taken to the basement and put in a cage. Several hours later, I am brought before a court appointed lawyer, Ms. Vionnette Reyes Johnson, Supervisory Attorney with the Federal Defender Program, INC. Ms. Johnson informs me the arrest warrant is invalid and that I will be taken before Judge Vineyard. She tells me that the Vizant attorneys have told Judge Vineyard that I was fleeing the court's jurisdiction on the Appalachian Trail. I ask her "who's jurisdiction". She is unsure. She tells me that I will have to agree to go to Philadelphia or Judge Vineyard will not release me, despite the invalid warrant. After the meeting, I am taken back to the cage. Several hours later, I am brought before Judge Vineyard. Judge Vineyard instructs me that he and Judge Bartle have spoken, and I am ordered to "voluntarily appear" before Judge Bartle in the Eastern

District of Pennsylvania, simultaneously Judge Bartle issues an

ORDER for me to appear in the PA district court. I am released

from the illegal custody eight (8) hours later. **(EXHIBIT U5)**

131.   Fearing for my life and not wanting to be forced to witness Judge

Bartle, Mr. Kang, and Mr. Mathews rape me of my civil rights

with a sham trial in which I wasn't allowed to know the identity of

the witnesses or conduct discovery on the evidence, I declined to

"voluntarily appear" in the Pennsylvania district court and

continued to press forward with my appeal in the 3rd Circuit and

my attempts to have the defendants' misconduct and illegal racket

addressed.

132.   In early July of 2016, I was ordered by the Third Circuit Court of

Appeals (Case No. 16-1824) to render a $505 filing fee or file a

motion to proceed in the form of a pauper. My appeal detailed the

fraud perpetrated on the Eastern District of Pennsylvania District

Court by Vizant Technologies, Edward T. Kang, Gregory

Mathews, KANG HAGGERTY & FEBROYT, and Judge Harvey

Bartle, III, as a means to silence my warnings that Capital

Solutions, Inc. was running a Ponzi like scheme through the

enterprise, Vizant Technologies, LLC. The 3d Cir ordered me to file by July 14, 2016, or my appeal would be dismissed. Additional, Fulton State Court had ordered me to appear at the same time.

133. After conspiring to obstruct my court filings and attempts to seek redress from their fraud on the ED of PA district court and cause me to be absent from the proceedings in the Fulton State Court, the defendants[30], to include POOLE, improperly influenced Judge Bartle and Judge Vineyard to issue a second unlawful warrant for a purported offense committed in Pennsylvania. As before, Judge Bartle lacked the territorial jurisdiction to have me arrested so he put undue pressure on the junior Judge Vineyard, *who lacked* ***completed*** *jurisdiction,* and together with the defendants[31] persuaded Judge Vineyard to issue the knowingly void warrant for my arrest. Additionally, there was no oath offered in support of probable cause and the warrant was unsigned by a Judicial Officer, rendering it **glaringly void on its face**. Regardless, on

---

[30] [30] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, KANG HAGGERTY FETBROYT, Edward Kang, David Askinas, Gregory Mathews.,

[31] [31] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, KANG HAGGERTY FETBROYT, Edward Kang, David Askinas, Gregory Mathews.

July 7, 2016 (seven days before the filing fee is due at the 3rd Circuit and days before my scheduled appearance in the Fulton State Court matter) at approximately 0600 hrs. the front door of my home was kicked in by US Marshals from the Northern District of Georgia.

134. Moments before, my nineteen (19) year old son, Matthew, was boxed in, surrounded by US Marshals and forced to pull over, while driving to work. He was order out of his vehicle and searched by the US Marshals. Marshal Keown questioned Whitchurch's son and demanded to know the whereabouts of his mother. Specifically, whether or not I was at home at the time. Despite his repeated request to leave and contact me, he was unlawfully detained by the US Marshals. Specifically, Matthew begged the Marshals to allow him to contact me to ensure I would be properly dressed. His request was laughed off. At one point during the unlawful custody, a Marshal suggest he contacts Matthew's employer "and let them know what's going on".

135. Back at the Whitchurch home, I had just gotten out of the shower and was half dressed when I was snatched up and drugged down

the hall and into the living room. I was slung into the banister with great physical force, by the arresting officer M. Blackman. He grabbed me, as I toppled over the top of the railing and slammed me backwards into the front door, whereby he states, "I'm so tired of messing with you". I was handcuffed and dragged onto my front lawn in the jeans and bra I was wearing. I demanded to see the arrest warrant and be informed of the charges. He laughed and told me "NO". I demanded clothes. He tells me "NO". By this time, my second son, a seventeen (17) year old minor, was on the front lawn with his cell phone filming the event. One of the marshals says "camera" and my son's phone was summarily seized and he was placed in handcuffs.

136. I am put in the back of a van and taken to the Federal Courthouse in Atlanta, I was searched and put in a cell. I remained in that cell until I was brought before Rebecca Shepard. Ms. Shepard informed me she was with the Federal Defender Program, that she is aware Ms. Johnson represented me before, but tells me Ms. Johnson is not available, and Judge Vineyard has asked her to meet with me and answer any questions I may have. She offers to

contact my husband and tell him I have been arrested. I accept and provide her with his contact information. Ms. Shephard contacts my husband, represents herself as an attorney with the Federal Defender Program and informs him that I will be taken to Pennsylvania.

137. I am taken back to the cage and 4 hours later I was brought before Judge Vineyard. Ms. Shephard was sitting at the defense table, and I was seated next to her by the US Marshals. Judge Vineyard entered the courtroom, took the bench, and informed everyone he had just "spoken with Judge Bartle" and that the two of them have agreed to have me taken to Pennsylvania since I would not go "voluntarily". I challenged the court's jurisdiction, the unlawful arrest warrant, and Judge Vineyard's authority to have someone extradited[32]. I begged Ms. Shephard to say something in my defense, given she was seated at the defense table and was a public defender.

---

[32] Black's Law Dictionary defines extradition as: The surrender of a criminal by a foreign state to which he has fled for refuge from prosecution to the state within whose jurisdiction the crime was committed, upon the demand of the latter state, in order that he may be dealt with according to its laws.

138. To delay, what appeared to be my kidnapping and given my public defender was nothing more than a deliberate attempt to deny me the constitutional right to counsel, I went at it alone and attempted to prevent the assault on my person and rights. I wasn't; under oath so I denied being me and demanded an identity hearing. Judge Vineyard became enraged and ordered that I be immediately taken back to the cage. Ms. Shephard turns to me and states "all you're doing is upsetting everyone." I look at her like she is crazy. I am taken back to the basement and questioned repeatedly by the Marshals as to my identity. I asked again to see the arrest warrant and inquired as to whether anyone was ever going to read me my Miranda rights. I am told by the Marshals that it is not legally necessary for them to read me my rights. I tell them they are wrong. They laugh at me.

139. After being held and terrorized for no less than eight (8) hours, I am taken back before Judge Vineyard. Once again, Ms. Shephard is seated at the defense table. And although Ms. Shephard has presented herself as an attorney with the Federal Defenders Program, meet with me in the capacity of her profession, and

plopped herself down at the defense table, she refused to defend me. She's mute. She's useless. One of the US Marshals offers testimony that he recognizes me from my prior illegal arrest and is sure I am Julie Whitchurch. I am never sworn in and asked my identity. Judge Vineyard offers testimony that he too is certain I am Julie Whitchurch. The US Marshal and Judge Vineyard are the only person allowed to testify and speak on the matter, I am not allowed to offer any testimony or call any witnesses. **(Exhibit U5)**

140. After the sham identity hearing I was turned over to the US Marshals and Judge Vineyard instructed them to take me to Pennsylvania. I was put on a bus that was filled with male federal prisoners. The bus was driven to an undisclosed garage, and the driver embarked. I am harassed relentlessly. I am in fear for my life.

141. I was purposely detained for thirteen (13) days, transported between three (3) different Federal Detention Centers, never shown or given a copy of the arrest warrant, never read my rights, and never afforded *competent* legal representation all for the

purpose of obstructing, and impeding the administration of justice and preventing, what would otherwise be, a timely and correctly filed appeal.

142. Upon information and belief, the defendants[33], with Judge Bartle's guidance, improperly influenced Brian Johnson, the ESR Operator during the hearing in the ED of PA District Court, on April 15, 2015, to alter the digital recording of the preliminary injunction hearing testimony to exclude seventeen (17) pieces of evidence that had been entered into the record. The transcript of the testimony has been altered to exclude the arguments made by Whitchurch, Kang, and Mathews, the comments of Judge Bartle, and his final rulings on the admission of the evidence. Those entire conversations have been deleted and replaced with a "Pause" or "Thank You".

---

[33] Vizant Technologies, LLC, Capital Solutions, INC, Frank Seidman, Lane Wiggers, Joseph Bizzarro, Edward Kang, Gregory Mathews, KANG HAGGERTY & FEBROYT, and David Askinas

# V. RICO Predicated Act

## COUNT 1

### *18 U.S. CODE § 1962(d)- Conspiracy to violate RICO statute*

The defendants named in Count 1 are: Vizant Technologies, LLC, Joseph N. Bizzarro, Frank Seidman, David Askinas, Capital Solutions, INC, Lane Wiggers, IT ACCELERATION, INC, David Yarnall, KANG HAGGERTY & FEBROYT, Edward Kang, Gregory Mathews, Todd Poole, POOLE HUFFMAN, ELARBEE THOMPSON, Read Gignilliant, and Douglas Duerr.

Count 1 of the complaint charges the defendants agreed and conspired with one or more persons to conduct and/or participate in the conduct of the enterprises' affairs through a pattern of racketeering activity, which is detailed herein.

## COUNT 2 *through* COUNT 6

### *18 U.S. CODE § 1349-Attempt and Conspiracy*

### *18 U.S. CODE § 371-Conspiracy to Defraud United States*

### *18 U.S. CODE § 1341-Mail Fraud*

The defendants named in Count 2, 3, 4, 5, and 6 are: Vizant Technologies, LLC, Joseph N. Bizzarro, Frank Seidman, David Askinas, Capital Solutions, INC, Lane Wiggers, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, and Douglas Duerr.

As detailed within this complaint, by knowingly agreeing to facilitate two separate schemes to: 1) extort a settlement and/or monies from me by presenting me and the IRS with a knowingly false 1099 MISC form, claiming to have compensated me some $20,000, and thus, causing me to be billed over $7,000 in state and federal income taxes, and representing Vizant Technologies, LLC would withdraw the false claims from the IRS if, *and only if*, I would agree to their settlement terms, which included a prior restraint of my speech, and 2) defraud the Internal Revenue Service with false claims of wage and earning payments to me in an effort to avoid Vizant Technologies, LLC paying federal/state taxes on those monies *and* then using the United States Postal Service (on two separate occasions) to execute both those schemes, the defendants have committed five predicated RICO acts in furtherance of the enterprise.

## COUNT 8 through COUNT 9

*18 U.S. CODE § 1349-Attempt and Conspiracy*

*18 U.S. CODE § 371-Conspriacy to Defraud United States*

*18 U.S. CODE § 1343-Wire Fraud*

The defendants named in Count 7, 8, and 9 are: Vizant Technologies, LLC, Joseph N. Bizzarro, Frank Seidman, David Askinas, Capital Solutions, INC, and Lane Wiggers.

As detailed within this complaint, by conspiring to, and by devising a scheme to cause state and federal benefits to be withheld from Whitchurch, by threatening to and, by make knowingly fraudulent representations to the Georgia Department of Labor, with the intent of defrauding the State of Georgia and the US, of the Vizant Technologies, LLC portion of those payment, and then electronically faxing and emailing those false claims, in furtherance of that scheme and the enterprise, defendants have committed their 7th, 8th, and 9th predicated RICO acts.

## COUNT 10 and COUNT 11

*18 U.S. CODE § 1349-Attempt and Conspiracy*

*18 U.S. Code § 1505 - Obstruction of proceedings before departments, agencies, and committees*

The defendants named in Count 10 and 11 are: Vizant Technologies, LLC, Joseph N. Bizzarro, Frank Seidman, David Askinas, Capital Solutions, INC, Lane Wiggers, Todd Poole, and POOLE HUFFMAN.

As detailed within this complaint, by compensating David Askinas to fraudulently represent himself as "General Council" of Vizant Technologies, LLC, and one with the legal authority to make the legal decisions on behalf of the enterprise, with the intent to corruptly obstruct and influence the proceedings before the Georgia Department of Labor, in an effort to defraud the United States, State of GA, and Whitchurch of monies, it would appear the defendants have committed their 10th and 11th predicated RICO acts.

By conspiring with and paying Todd Poole, and by Todd Poole accepting the monies, for his fabricated affidavit, and with POOLE having the knowledge and intent that this action would obstruct the fair administration of justice, POOLE and the codefendants have violated US Code 1505 and 1349.

## COUNT 12 through COUNT 21

*18 U.S. CODE § 1349-Attempt and Conspiracy (5 Counts)*

*18 U.S.C. § 1512-Tampering with a witness, victim, or informant (5 Counts)*

The defendants named in Counts 12, 13, 14, 15, 16, 17, 18, 19, 20, 21 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC., Read Gignilliant, Douglas Duerr, and ELARBEE THOMPSON WILSON & SAPP.

As detailed herein, by conspiring to, and by sending me the email communications which threatened the safety and security of my children, two days prior to my appearance before the Cobb Superior Court, in a willful attempt to terrorize me and/or extort a settlement from me, and then executing that scheme, the defendants have committed two additional predicated RICO acts.

As detailed herein, by conspiring to, and by paying David Askinas to: 1) impersonate a licensed attorney able to legally take the action, as to the law, for the enterprise and parties associated therein; 2) intimate and terrorize me with horrific stories of a pro se litigant being "violated"

in federal prison, to the point that he "was never the same again", and then 3) threaten that the enterprises misconduct and illegal actions towards me would continue if I did not agree to take the $150,000.00 they were offering at the time, all moments before I was to testify, against Bizzarro and the enterprise in the Cobb County Superior Court, the defendants have committed two additional predicated RICO acts.

As detailed herein, by conspiring to and by manufacturing the two Facebook friend requests and postcard, and putting all three pieces of fabricated evidence before the court in the Vizant Motion to Show Cause, with the intent of; 1) obstructing and impeding the administration of justice; 2) attempting to coerce me into a settlement; and 3) violating my civil rights by obstructing any chance of a fair and impartial tribunal and attempting to have me unfairly incarcerated, based on their manufactured evidence and Bizzarro's suborned testimony, the defendants have committed their 16th, 17,th, 18th, 19th, 20th , and 21st RICO predicated acts: obstruction of justice x 3 and conspiracy to obstruct x 3. These six separate acts are in direct violation of federal code 18 U.S.C. § 1512 (c) and 18 U.S. Code § 1349.

## COUNT 22 and COUNT 23

*18 U.S. Code § 1028 – Fraud & Related Activity in connection with identification documents, authentic features, and information*

*18 U.S. CODE § 1349-Attempt and Conspiracy*

The defendants named in Counts 22 and 23 are: Joseph Bizzarro, Lane Wiggers, David Askinas, Frank Seidman, Capital Solutions, Inc., Vizant Technologies, LLC, and ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, and Douglas Duerr.

By conspiring to and by reproducing and altering the birth certificate of Bizzarro's adult son, and then transferring that document to Mr. Gilligiant, with the intent to defraud the Cobb County Superior Court and obstruct justice, for the purpose of bolstering Bizzarro's perjured testimony of a minor child, all done in furtherance of the enterprise, the defendants have committed their 22nd and 23rd RICO predicate act.


## COUNT 24 through COUNT 35

*18 U.S. Code § 201 - Bribery of public officials and witnesses (6 Counts)*

*18 U.S. CODE § 1349-Attempt and Conspiracy (6 Counts)*

The defendants named in Counts 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 are: Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, Inc., Vizant Technologies, LLC, Edward Kang, Gregory Mathews, and KANG HAGGERTY & FETBROTY, LLC, ELARBEE THOMPSON WILSON & SAPP, Douglas Duerr, Read Gignilliant, IT Acceleration, INC, and David Yarnall.

As detailed herein, by conspiring to, and by corruptly persuading and paying David Yarnall and Gary Hunt, of IT Acceleration, with the ill-gotten proceeds from the enterprise, to commit perjury, and alter, conceal, destroy, and/or manufacture evidence, with the intent of obstructing my civil rights and to silence my opposition to the criminal organization, the defendants have committed their 24th and 25th RICO violations.

As detailed herein, by conspiring to, and by corruptly persuading and paying Aeron Sharp, of Vizant Technologies, LLC, with the ill-gotten proceeds of the enterprise, to commit perjury and conceal the material facts regarding her contact, or lack thereof, with John Wolf and Tacoma Screw Products, with the intent of obstructing the

administration of justice and furthering the enterprise, the defendants have committed their 26th and 27th RICO predicate acts.

As detailed herein, by conspiring to, and by corruptly persuading and paying Douglas Duerr, of ELERBEE THOMPSON SAPP & WILSON, with ill-gotten investments and proceeds from the enterprise, to commit perjury, suborn perjury, and conceal Bizzarro's access to the computer and USB devise located at the offices of ELARBEE THOMPSON, the defendants have committed their 28th and 29th predicated RICO violations.

As detailed herein, by conspiring to, and by corruptly persuading and paying Karen Larsh, of ELERBEE THOMPSON SAPP & WILSON, with the ill-gotten proceeds of the enterprise, to commit perjury and conceal material facts, with the intent of biasing the Court and obstructing the fair and impartial administration of justice, in furtherance of the enterprise, the defendants have committed their 3oth and 31st RICO predicate acts.

As detailed herein, by conspiring to and by corruptly influencing, Judge Bartle to persuade and rewarding Brian Johnson for altering the digital recording of the preliminary injunction hearing, with the

purpose of obstructing the administration of justice and with the intent of defrauding the Eastern District of Pennsylvania District Court, the defendants have committed their 32nd and 33rd predicated RICO violations.

The defendants named in counts 34 and 35 are: Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, Inc., Vizant Technologies, LLC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, Todd Poole, and POOLE HUFFMAN, LLC. EARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, IT ACCELERATION, David Yarnall, Todd Poole, and POOLE HUFFMAN.

By conspiring to, and by corruptly persuading and then paying Todd Poole, of POOLE HUFFMAN, LLC., with the ill-gotten proceeds of the enterprise, to file his knowingly false declaration with the Fulton State Court and conceal records and material facts from that court, for the purpose of illegally obtaining my wages, to further the enterprise, the defendants have committed their 34TH and 35th predicated RICO acts.

### COUNT 36 through COUNT 47

*18 U.S. CODE § 1349-Attempt and Conspiracy (2)*

*18 U.S. Code § 1201 – Kidnapping (2)*

*O.C.G.A. 16-4-8- Conspiracy to commit a Crime (2)*

*O.C.G.A. 16-5-40-Kidnapping and False Imprisonment (2)*

*18 U.S. CODE § 1349-Attempt and Conspiracy (2)*

*18 U.S. Code § 1505 - Obstruction of proceedings before departments, agencies, and committees (2)*

The defendants named in Count 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, and 47 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Frank Seidman, Capital Solutions, INC, Lane Wiggers, Gregory Mathews, Edward Kang, KANG HAGGERTY & FETBROTY, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, POOLE HUFFMAN, Todd Poole, Judge Russell Vineyard, Judge Harvey Bartle, III., US Marshal Keown, US Marshal Blackman, and the Department of Justice/US Marshals Service.

By (twice) conspiring to, and by (twice) orchestrating the unlawful seizing, confining, and transporting across state lines of the plaintiff, under the color of law and with a complete lack of jurisdiction and/or lawful arrest warrant, the defendants have committed eight

additional RICO predicated acts in the form of conspiracy to kidnap and kidnapping.

By conspiring to, and by facilitating my kidnapping and arranging for me to be falsely imprisoned, at the same time I was seeking redress of their fraud on the ED of PA district court, and with the intent of preventing my filings with the 3rd Circuit Court of Appeals (as ORDERED by that Court) and thus impeding the administration of justice, the defendants have committed 4 additional predicated acts in the form of conspiracy to obstruct justice and obstruction of justice. RICO charges are not asserted, at this time, against Judge Russel Vineyard, Judge Harvey Bartle, III, the US Marshals, or the DOJ

## COUNT 48 and COUNT 49

*CODE § 1349-Attempt and Conspiracy*

*18 U.S. Code § 1509 - Obstruction of court orders*

The defendants named in Counts 48 and 49 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE

THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, and POOLE HUFFMAN.

By conspiring to, and by corruptly persuading Judge Bartle to coerce Judge Russell Vineyard and James Hatten, of the Northern District of Georgia, to issue knowingly unlawful warrant(s) for the plaintiff's arrest, with the intent of causing the plaintiff to withhold documents and other objects from the official proceedings in the 3rd Circuit Court of Appeals, the defendants have committed 48th and 49th predicated RICO violations.

## COUNT 50 through COUNT LIII

*O.C.G.A. § 16-8-4  Theft by Conversion*

*O.C.G.A. § 16-8-4  Theft by Deception*

*O.C.G.A. § 16-8-4  Theft of Service*

*O.C.G.A. § 16-8-4  Theft by Extortion*

The defendants named in Counts 50, 51, 52, and 53 are:  Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE

THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, and POOLE HUFFMAN.

By bribing Todd Poole to file a knowingly false affidavit proclaiming Vizant Technologies, LLC had obtained a monetary judgment in the Northern District of Georgia District Court, for the purpose of unlawfully seizing my wages, in furtherance of the enterprise and criminal organization, the defendants have committed their 50th predicated RICO act.

By falsely representing, multiple times, that I would be reimbursed for all out of pocket expenses occurred in the performance of my duties as the National Director of Business Development, with the full knowledge that the enterprise and criminal organization associated therewith had no intention of such, the defendants have committed their 51st predicated RICO act.

By falsely representing that I would be compensated for attending/conducting meetings with potential Vizant Technologies, LLC clients, the defendants have committed their 52nd predicated RICO act.

By conspiring to, and by bribing Douglas Duerr and Read Gignilliant to extort and/or coerce a settlement from Whitchurch by

fraudulent representing she would be given the earnings and wages owed if she would agree to the criminal organizations demands. The defendants have committed their 53rd predicated act.

## COUNT 54

*18 U>S. Code § 373- Solicitation to commit a crime of violence*

The defendants named in Counts 54 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, and POOLE HUFFMAN, Judge Vineyard, and Judge Harvey Bartle, III.

With the intent that the US Marshals would engage in conduct that constituted a felony, Whitchurch's unlawful arrest and false imprisonment, the defendants have violated 18 U.S. Code § 373 and committed their 54th RICO predicated act.

## Civil Rights Violations

## COUNT 55

### *18 U.S. Code § 241 - Conspiracy against rights*

The defendants named in Count 55 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, Todd Poole, POOLE HUFFMAN, ELARBEE THOMPSON WILSON & SAPP, Douglas Duerr, Read Gignilliant, Judge Russell Vineyard, Judge Harvey Bartle, III, Marshal Keown, Marshal Blackwood, Rebecca Shephard, and the Department of Justice/Marshals Service.

From the onset of the Cobb County Superior Court litigation, in April of 2014, and continuing to date, the defendants conspired to and did injure, oppress, threaten, and intimidate Whitchurch in the free exercise and enjoyment of rights and privileges secured by the Constitution. Specifically, by engaging in a pattern of bad and, outright illegal conduct with the intent of illegally stripping Whitchurch of her rights to free speech, to be free from unlawful seizures, rights to due

process, and her right to a fair and impartial tribunal, for the purpose of silencing Whitchurch allegations of a Ponzi scheme and criminal organization being run by the defendants, they have knowingly violated 18 U.S.C. § 241.

By conspiring to oppress, prevent, and/or block any reasonable attempts made by Whitchurch to conduct the deposition of the expert witness; and by conspiring to, and by suborning the perjury of the witnesses, to include: David Askinas, Karen Larsh, Douglas Duerr, Aeron Sharp, Joseph Bizzarro, Todd Poole, Gary Hunt, and David Yarnall, and for the purpose of furthering the criminal organization and the enterprise, the defendants have violated 18 U.S.C. § 241.

By conspiring to have Whitchurch unlawfully arrested, transported across state lines, and held for half a month without due process and jurisdiction, for the purpose of obstructing the administration of justice and terrorizing Whitchurch, the defendants have violated 18 U.S.C. § 241.

By conspiring to, and by giving the appearance of legal power to act on behalf Whitchurch, and by participating in the sham identity/extradition hearing with the expressed purpose and intent of;

1) blocking Whitchurch from receiving competent legal representation; 2) aiding and abetting the defendants in Whitchurch's unlawful arrest and false imprisonment/kidnapping, and 3) to obstruct Whitchurch's court filings in the 3rd Circuit Court of Appeal all in furtherance of the enterprise and/or at the bequest of persons associated with the enterprise, Ms. Shephard violated 18 U.S.C. § 241..

## COUNT 56

*18 U.S. Code § 242 - Deprivation of rights under color*

The defendants named in Count 56 are: Judge Russell Vineyard, Judge Harvey Bartle, III, US Marshal Keown, Rebecca Shephard, and US Marshal Blackwood.

By acting under the color of law and willfully subjecting Whitchurch, to what they knew at the time, was an unlawful arrest and kidnaping, for the expressed purpose of terrorizing her and preventing her court filings, which detailed Judge Harvey Bartle's participation in a fraud in the ED of PA District Court, the defendants have violated 18 U.S.C. § 242.

## State Law Violations

## COUNT 57

*Pennsylvania Common law claim for Abuse of Process*

The defendants named in Counts 57 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, and David Yarnall.

By engaging in a pattern of bad faith and illegal conduct during the ED of PA litigation, which included, but was not limited to: bribing witnesses, obstructing justice, preventing depositions or refusing to produce witnesses with abusive litigation tactics, suborning perjury, perjury, manufacturing and concealing evidence, the defendants have committed a gross violation of the Pennsylvania statue against an Abuse of Process,

## COUNT 58

*O.C.G.A. 51-6-1- Georgia Tort Claim for Fraud and Deceit*
*O.C.G.A. 51-6-2-Misrepresentaiton of material Fact*

The defendants named in Counts 58 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, and David Yarnall.

As detailed herein, by making willful misrepresentations promising certain wages, earnings, and expenses for services rendered by Whitchurch, with the intent to induce Whitchurch to act, knowing full well the owed wages, earnings, and expenses would not be paid as promised, and thus causing injury to Whitchurch, the defendants have committed a tortious offence of fraud.

As detailed herein, by making numerous willful misrepresentations promising to give Whitchurch the owed earnings, wages, and expenses, with the intend of cause Whitchurch to act, and thereby causing injury, the defendants have committed a tortious offense of fraud.

As detailed herein by making willful misrepresentations to the Fulton State Court, with the intent of causing the court to act to

Whitchurch's detriment, and thereby causing injury, the defendants have committed a tortious offense of fraud.

## COUNT 59 through COUNT 61

*O.C.G.A. 51-7-1-Right of action for False Arrest*
*O.C.G.A. 51-7-22-False imprisonment by several persons*
*O.C.G.A. 16-4-7-Criminal Solicitation and Criminal Conspiracy*

The defendants named in Counts 59, 60, and 61 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, David Yarnall, Judge Harvey Bartle, III, Judge Russel Vineyard, US Marshall Keown, US Marshal Blackwood, and Rebecca Shephard.

As detailed herein, with intent that the US Marshals engage in conduct constituting a felony, the defendants conspired to and did solicit, request, command, and otherwise cause the Marshals to engage in such conduct.

## COUNT 62

*Negligence*

The defendants named in Counts 62 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, and David Yarnall.

As details herein, by allowing, encouraging, rewarding, and/or turning a blind eye to the unlawful and bad faith conduct of their employees, the defendants are liable for the injuries to Whitchurch caused by those acts.

## COUNT 63

*O.C.G.A. 51-5-4-Defamation*

The defendants named in Counts 63 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, and David Yarnall.

As detailed herein, by imputing to the US Marshals, Mr. Schenck, and other third parties, that Whitchurch had committed a crime, Whitchurch was damaged in her person and reputation.

## COUNT 64

### *Invasion of Privacy / False Light*

The defendants named in Counts 64 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, IT ACCELERATION, David Yarnall, M. Keown, and M. Blackwood.

As detailed herein, by publicly placing Whitchurch in a false light as a criminal and publicly disclosing private facts that are offensive the defendants have knowingly and intentionally invaded her privacy.

## COUNT 65

### *Intentional infliction of emotional distress*

The defendants named in Counts 65 are: Vizant Technologies, LLC, Joseph Bizzarro, David Askinas, Lane Wiggers, Frank Seidman, Capital Solutions, INC, Edward Kang, Gregory Mathews, KANG

HAGGERTY & FETBROYT, LLC, ELARBEE THOMPSON WILSON & SAPP, Read Gignilliant, Douglas Duerr, Todd Poole, POOLE HUFFMAN, IT ACCELERATION, David Yarnall, Judge Harvey Bartle, Judge Russell Vineyard, US Marshall Keown, and US Marshal Blackwood.

The defendants' conduct, detailed herein, was intentional, reckless, and extreme. As a direct result of my false arrest, kidnapping, and physical assault and the defendants outrageous misconduct and illegal actions detailed herein, I suffer from debilitating anxiety, panic attacks, and depression.

## Relief Sought Damages

I ask for judgment against the Defendants, jointly and severally, as follows:

a.      For an INJUNCTION ORDER enjoining defendant[34] from managing, overseeing, investing, participating in/or conducting the affairs of the enterprise;

---

[34] Elarbee Thompson Wilson & Sapp, Read Gignilliant, Douglas Duerr, IT Acceleration, David Yarnall, Capital Solutions, INC, Frank Seidman, Lane Wiggers, David Askinas, Joseph N. Bizzarro, KANG HAGGERTY & FEBROYT, LLC, Edward T. Kang, Gregory Mathews, POOLE HUFFMAN, LLC, and Todd Poole.

b.     For an ORDER OF DISGORGEMENT (without compensation) of the ill-gotten proceeds, gained by KANG HAGGERTY, Capital Solutions, Inc., POOLE HUFFMAN, LLC, Frank Seidman, Joseph N. Bizzarro, Lane Wiggers, David Askinas, IT Acceleration, David Yarnall, ELARBEE THOMPSON SAPP & WILSON, Todd Poole, Edward T. Kang, Gregory Mathews, Read Gignilliant, Douglas Duerr, and their employees for racketeering acts committed in furtherance, and on behalf, of the enterprise;

c.     For compensatory damages against Defendants in an amount to be determined by a jury at trial, together with interest thereon, plus special, consequential, and incidental damages, plus cost to date;

d.     For punitive damages sufficient to punish and deter Defendants;

e.     For lost wages; past, present, and future;

f.     For those earnings, commissions, and expenses stolen from the plaintiff;

g.     For the trebling of all compensatory damages (including all general, special, consequential, and incidental damages, and costs) and

punitive damages as demanded by the provisions of Georgia RICO statues.

    h.    For a trial by jury of twelve citizens; and

    i.    For such other and further relief that the Court deems just and proper.

I declare under the penalty of perjury that the foregoing allegations detailed in the complaint are true and correct.

March 19, 2018

Julie P. Whitchurch

103 Golden Hills Drive

Woodstock, GA 30189

404.606.3626

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

JULIE P. WHITCHURCH, Plaintiff        :
             v.        :    CIVIL ACTION
ELARBEE THOMPSON WILSON & SAPP, LLP,   :   NO;
READ GIGNILLIANT,        :
DOUGLAS DUERR,        :   1:17-cv-05205-AT
REBECCA SHEPHARD,        :
POOLE HUFFMAN, LLC,        :   JURY DEMAND
TODD POOLE,        :
VIZANT TECHNOLOGIES, LLC,        :
JOSEPH N. BIZZARRO,        :
LANE WIGGERS,        :
DAVID ASKINAS,        :
FRANK SEIDMAN,        :
CAPITAL SOLUTIONS, INC,        :
IT ACCELERATION, INC,        :
DAVID YARNALL,        :
KANG HAGGERTY FETBROYT, LLC        :
EDWARD T. KANG,        :
GREGORY MATHEWS,        :
MATTHEW KEOWN,        :
M. BLACKWOOD,        :
JUDGE HARVEY BARTLE, III,        :
JUDGE RUSSELL VINEYARD,        :
DEPARTMENT OF JUSTICE/        :
US MARSHALS SERVICE,        :
Defendants        :

---

## CERTIFICATE OF SERVICE

I herby certify that the foregoing FIRST AMENDED COMPLAINT AS TO

DEFENDANTS POOLE was filed with the Clerk of the Court in person on March

18, 2018.  I have mailed, US priority, copies to defendants POOLES' attorney,

Kathryn S Whitlock, at 303 Peachtree Street, NE, Ste 4000, Atlanta Ga 30308.

Julie P. Whitchurch

103 Golden Hills Drive

Woodstock, GA 30189